(No. 11074.—Decree affirmed.)

THE ILLINOIS CHRISTIAN MISSIONARY SOCIETY, Appellee, vs. THE AMERICAN CHRISTIAN MISSIONARY SOCIETY et al. Appellants.

*Opinion filed February 21, 1917.*

1. WILLS—*restrictions as to power of alienation are not favored and will be construed strictly.* Restrictions in wills as to the power of alienation are not favored and will be construed with the utmost strictness, to the end that the restraint shall not be extended beyond the express stipulation.

2. SAME—*when a power of sale will be implied in a will.* A power of sale will be implied where the language of a will shows an intent to create such power or where such power is necessary in order to carry out its provisions.

3. SAME—*real estate may be included in word "fund," as used in will.* The word "fund," used in a will, ordinarily means money or negotiable papers readily convertible into cash, but it will be held to include real estate if such appears to be the testator's intention.

4. SAME—*when use of word "fund" indicates intention of testator that real estate be converted into money.* Where a testator gives all the residue of his estate, both real and personal, to a charitable use, "to be a permanent fund, the rents, issues, profits or income of which shall be used year after year," the use of the word "fund" indicates an intention to have the real estate converted into money, and the words "rents, issues, profits" do not necessarily mean that the real estate shall never be sold.

APPEAL from the Circuit Court of Piatt county; the Hon. GEORGE A. SENTEL, Judge, presiding.

HERRICK & HERRICK, and J. D. ELLIS, for appellants.

CARL S. REED, for appellee.

Mr. JUSTICE COOKE delivered the opinion of the court:

Appellants and appellee are the beneficiaries under the last will and testament of Thomas E. Bondurant, who died in Piatt county January 16, 1905. He died seized of between 900 and 1000 acres of real estate in that county. By

277 — 13

the first, second and third clauses of his will he provided that his debts be paid; devised to his sister, Mary E. Bondurant, his homestead in fee, together with all the personal property contained in and used in connection with his home, and bequeathed to her the sum of $2000 per year during each and every year of her natural life. The payment of this annuity was made a charge and lien upon all his real estate except that devised to her. By the fourth and fifth clauses he bequeathed to the Christians, or Disciples of Christ, (religious congregations at Urbana and Champaign,) $2000 each for the building of a Christian church at each of those cities upon certain conditions. By the sixth clause he provided for the maintenance of a young man who at the time of the execution of the will was attending Drake University, at DesMoines, Iowa. By the seventh clause he made certain bequests to the trustees of Eureka College. By the eighth clause the executor was authorized to convert into cash any part of his estate necessary for the payment of the bequests made, excepting that devised and bequeathed to his sister. By the ninth clause he provided that his executor should keep his estate intact for ten years after his death and obtain therefrom the largest income possible consistent with good management and good husbandry and apply the proceeds to the payment of his debts and the legacies. The tenth clause is as follows:

"*Tenth*—At the expiration of ten years from and after my death, and subject to the devises, legacies, bequests and provisions of the first nine clauses of this will, and the costs and expenses of the execution of this will as hereinafter provided for or legally chargeable against my estate, I give, devise and bequeath all the rest and residue of my estate, both real and personal, and the increase and accumulations thereof, for the trust purposes herein expressed, to the following corporations, societies or conventions, that is to say: One-fourth of such residue to the American Christian Missionary Society, whose headquarters are in Cin-

cinnati, Ohio, for its use; one-fourth of such residue to the said American Christian Missionary Society, the same to be added to the church extension fund of the said society; one-fourth of such residue to the Foreign Christian Missionary Society, being the society of the Christian Church or Disciples of Christ engaged in carrying on its foreign missionary work; and one-fourth of such residue to the Illinois Christian Missionary Convention, being the organization of the Christian Church or Disciples of Christ having charge of its missionary work in and for the State of Illinois. And it is my will, and it is hereby expressly provided, that each of the legacies or bequests in this clause mentioned is a trust fund, and is to be used by the corporation, society or convention to which it is hereby bequeathed for the purposes for which the said corporation, society or convention is organized and for no other purpose. The said bequest to the said American Christian Missionary Society is to be a permanent fund, the rents, issues, profits or income of which shall be used year after year, perpetually, for the work of that society. The said bequest to the said American Christian Missionary Society to be added to the church extension fund of that society shall be used in aiding to build houses of worship, and shall be used and re-used for that purpose perpetually, according to the method of using the said church extension fund. The said bequest to the said Foreign Christian Missionary Society is to be a permanent fund, the rents, issues, profits or income of which shall be used year after year, perpetually, for the work of that organization. The said bequest to the said Illinois Christian Missionary Convention is to be a permanent fund, the income from $5000 of which shall be devoted and applied every year to missionary work in the city of Chicago, Illinois, and the rents, issues, profits and income from the residue of which shall be used year after year, perpetually, for the work of the said convention within the State of Illinois, including the said city of Chicago, which

is not excluded from the general benefit of the said fund by the said special provision in its behalf. The word 'income,' used in this clause, shall be deemed comprehensive enough to include interest on money loaned or on bonds or other securities, and this word, in connection with the special provision for the work in the city of Chicago, shall be as comprehensive as 'rents, issues, profits or income' in other connections in this clause."

By the eleventh clause he appointed his sister, Mary E. Bondurant, executrix without bond. She duly qualified as executrix and is now acting as such.

A controversy arose among the beneficiaries named in the tenth clause of the will as to whether they had the power, under the will, to sell real estate and convert the same into cash. The Illinois Christian Missionary Convention (now by change in its name the Illinois Christian Missionary Society) filed its bill in the circuit court of Piatt county for the construction of the tenth clause of the will. The bill alleges, and the answer admits, that it will not be necessary to sell any real estate to pay debts or legacies; that the lands are subject to the lien provided for the payment of the annuity to Mary E. Bondurant; that the church extension fund of the American Christian Missionary Society is a fund held by that society out of the principal of which loans are made from time to time to needy church organizations of the Christian Church or Disciples of Christ to enable them to build new houses of worship, and that the loans so made are re-paid to the American Christian Missionary Society, and the money so re-paid is again placed in said church extension fund and is used and re-used from time to time as a part of that fund. By its decree the circuit court found that it was the intention of the testator to vest the fee simple title to the lands in the beneficiaries named in the tenth clause of the will and to invest them with full power and authority to sell and dispose of the real estate devised, subject to the lien of Mary

E. Bondurant, and that the beneficiary societies had the right, if they could not agree on the sale of the land, to have partition, and if partition could not be had, that they each have the right to have the land sold and the proceeds divided according to their respective interests. It held further that appellee, the Illinois Christian Missionary Society, is seized of an undivided one-fourth interest in fee; that of the appellants the American Christian Missionary Society is seized of an undivided one-fourth interest for its own use and an undivided one-fourth interest to be added to the church extension fund of that society, and the Foreign Christian Missionary Society is seized of an undivided one-fourth interest, to be used for the work of the society. From that decree the two last named societies have prosecuted this appeal.

It is the contention of appellants that by the provisions of the tenth clause it was the manifest intent of the testator that these societies should take and hold this real estate in perpetuity for the purpose of devoting the rents and income therefrom to the objects specified. It is conceded that the condition of the estate is such that these societies received both real and personal property under this clause, and the testator no doubt was sufficiently familiar with his estate to know and realize that this clause would carry with it both real and personal estate. With this situation in view appellants point out that the terms "increase and accumulations," as used in this clause, must be applied to the personal property and not to the real estate, and that to the real estate the terms "rents, issues, profits or income" must be applied, and that when this distinction is borne in mind it must be apparent that the testator intended that only the interest from the money and the rents from the lands should be devoted by the societies named to the purposes for which they were organized.

Restrictions as to the power of alienation are not favored, and the policy of this State has always been to

construe such restrictions with the utmost strictness, to the end that the restraint shall not be extended beyond the expressed stipulation, and all doubts, as a general rule, must be resolved in favor of a free use of property and against restrictions. A power of sale will be implied where the language of a will shows an intent to create such power or where such power is necessary in order to carry out its provisions. "No particular form of words is necessary to create a power of sale. Any words which show an intention to create such power, or any form of instrument which imposes duties upon a trustee that he cannot perform without a sale, will necessarily create a power of sale in the trustee." (Perry on Trusts, sec. 766; *Cherry* v. *Greene,* 115 Ill. 591.) The tenth clause contains numerous expressions which indicate that the testator intended and expected his real estate to be converted into cash by the societies to which it was devised in trust. It provides that "each of the legacies or bequests in this clause mentioned is a trust fund." While real estate may be regarded as constituting a part of a fund, in the ordinary use of that word such a meaning would not be inferred. The word "fund" ordinarily means money or negotiable papers readily convertible into cash. This word was used by the testator in connection with the disposition of property that included real estate, which would indicate that he contemplated that the whole of the property thus disposed of would be converted into money. It is true that he provided that "the said bequest to the said American Christian Missionary Society is to be a permanent fund, the rents, issues, profits or income of which shall be used year after year, perpetually, for the work of that society." The words "rents, issues, profits" do not necessarily indicate that the real estate should never be sold. The testator had provided that his real estate be "kept together" for ten years, and he necessarily knew that when the beneficiaries named in the tenth clause came into

possession of the trust estate, a part of that estate, at least, would be in the form of realty, and so long as it was held in that form that "rents, issues, profits" would be applicable. One-fourth of the residuary estate was given to the American Christian Missionary Society, "the same to be added to the church extension fund of the said society." That fund, as is alleged by the bill and admitted by the answer, is one out of the principal of which loans are made to needy church organizations to enable them to build houses of worship. This fund necessarily consists of money, and it is apparent that the testator intended that one-fourth of his estate, both real and personal, be converted into money and added to the fund known as the church extension fund. This society could not loan real estate for the purpose of assisting in the building of churches, and this portion of the estate could be made available only by sale of the real estate, which must have been intended. This clause further provides that "the said bequest to the said Illinois Christian Missionary Convention is to be a permanent fund, the income from $5000 of which shall be devoted and applied every year to missionary work in the city of Chicago." Here the testator is speaking of money—not of real estate. Should appellee not receive enough personal property under the devise to it to create this fund, it would be impossible for it to carry out this provision of the will unless it had the power to sell the real estate. Without the power to sell it would be impossible to fully carry out the provisions of the will, and we are of the opinion that it was clearly the intention of the testator that the legatees named in the tenth clause should have such power.

The decree of the circuit court is affirmed.

*Decree affirmed.*