HARRIS TRUST AND SAVINGS BANK, as Trustee under the Will of Frank P. Hixon, Plaintiff, v. FRANCES GLORE BEACH *et al.*, Defendants-Appellees (Charles F. Glore III *et al.*, Defendants-Appellants).

First District (3rd Division)   No. 84—2864

Opinion filed June 25, 1986.

Sidley & Austin, of Chicago (Loren E. Juhl, Henry A. Preston, and John C. Vryhof, of counsel), for appellants.

Bell, Boyd & Lloyd, of Chicago (Francis J. Higgins, Robert L. Wiesenthal, and Janet D. Olsen, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Frank P. Hixon died in 1931, leaving a testamentary trust under which his wife received the income for her lifetime and a testamentary power to appoint the principal. Hixon's widow died 51 years later, in 1982, and the trustee, Harris Trust Savings Bank brought this action to determine the distribution of the trust. The trial court granted summary judgment in favor of Hixon's two surviving grandchildren, Frances Glore Beach and Robert Hixon Glore. Great-grandchildren, Charles F. Glore III, Sallie Glore Farlow and Edward R. Glore, appeal seeking to take the share of their deceased father. The issues include whether a direction to add certain shares to trusts not yet in existence is void; whether the class of "surviving grandchildren," which was to take following two life estates, includes a grandson who survived the second life-estate beneficiaries, but did not survive the first life-estate beneficiary; whether the term "grandchildren" includes great-grandchildren, or is limited to Hixon's grandchildren; and which law applies, that of Florida or Illinois.

The trial court granted partial summary judgment in favor of the grandchildren on the issue of whether the direction to add certain shares to other trusts was void. The court found the clause void and unenforceable due to its vagueness, and its violation of both the Rule against Perpetuities and the Statute of Wills. The trial court subsequently granted summary judgment in favor of the grandchildren on the other issues, finding that a "surviving grandchild" must survive all life estates; the term "grandchildren" does not include great-grandchildren; and the Illinois antilapse statute is not applicable.

Hixon died in 1931 at his home in Lake Forest, Illinois, where he had lived for six years. Hixon was president, a director, and principal shareholder of Pioneer Investment Company, which, during the five

years prior to his death, held 44 meetings, all in Illinois and 42 of which Hixon attended. Hixon was also the president and a director of Hixon & Company, a Delaware corporation with its principal office in Lake Forest during the period of 1929 to 1931. Hixon was a member of three Chicago-area country clubs and a businessmen's club. He contributed to a church in Lake Forest. Hixon's will and his income tax returns, however, stated that he was a resident of Lake City, Florida. The will was probated in Florida in 1931, but the records from that proceeding do not show that any finding was made or any question was raised about his domicile. At the time of his death, Hixon owned a one-half interest in a 9,000-square-foot lot in Lake City, Florida, which was valued at $1,750. The remainder of his estate consisted of personal property valued at $2,500,000.

Hixon was survived by his second wife, Alice, who continued to live in Lake Forest until her death, and his daughters Ellen, of Lake Forest, and Dorothy, of Los Angeles, California. Dorothy had no children. Ellen had three children: Charles F. Glore, Jr., who lived in Lake Forest until his death, and Robert of Lake Forest and Frances of Santa Barbara, California (grandchildren). All of the grandchildren were under the age of 21 when Hixon died. Charles F. Glore, Jr., was survived by three children, Charles, Sallie and Edward (great-grandchildren).

Under Hixon's will, one-third of his residuary estate was left to Dorothy, one-third to Ellen, and one-third was left in trust. The trustees were Robert Hixon and Charles Glore, Sr., both of Illinois, and later, Harris Trust, which has its principal place of business in Illinois. The corpus of the trust is approximately 18% of the issued and outstanding common stock of Pioneer Investment Company, which has had its principal place of business in Illinois since before 1931 until the present.

Under the trust, Alice was to receive the net income of the trust for her lifetime, with a special testamentary power to appoint the principal. In 1942, Alice partially released this power of appointment such that it could only be exercised in favor of tax-qualified charities. Dorothy and Ellen, after Alice's death, were to receive the net income for their lifetimes, with each daughter having a testamentary power to appointment over one-half of the principal. In 1942, Dorothy and Ellen partially released these powers such that the permissible appointees were limited to Hixon's grandchildren and tax-qualified charities. Dorothy and Ellen both died in 1973 without having exercised their powers of appointment. In anticipation of such an event, the will provided:

"In the event of the failure of my said daughters to dispose of all of the principal of said trust fund prior to their decease, the balance of said trust fund remaining shall be divided equally among my surviving grandchildren, the share of each grandchild to be added to and administered in the same manner as any trusts which may have been created in favor of such grandchild by his parents, and in the event that no trust has been created by the parents of said grandchildren, this trust shall continue until the youngest of my grandchildren arrives at the age of twenty-one years."

Harris Trust's complaint raised the question of whether the shares created by Hixon for the surviving grandchildren could be "added to" trusts created by Ellen. Ellen established approximately 21 *inter vivos* and testamentary trusts naming her children, among other people, as beneficiaries. For example, she created an irrevocable *inter vivos* trust in 1954 for the primary benefit of Charles F. Glore, Jr., and one for the primary benefit of Robert Hixon Glore. They each received the net income of the trust for life. At the termination of each life estate, the beneficiary's wife received the net income for her lifetime. Charles and Robert were each named as sole trustee of their respective trusts. When the primary beneficiary was no longer trustee, the net income could be distributed, at the discretion of a corporate trustee, among a class consisting of the primary beneficiary, his named wife, and issue. The corporate trustee also had discretion to distribute principal up to $5,000 per year if the beneficiary needed the funds for support, comfort, maintenance or education. Each trust provided that upon the death of the survivor of the primary beneficiary and his named wife, the principal was to be distributed to his issue *per stirpes*. Both of the trusts are still in effect. Ellen also created testamentary trusts naming Frances as the sole beneficiary of the net income during her lifetime. Upon her death, the principal is to be divided into sevenths for the benefit of Ellen's seven grandchildren.

Ellen's son, Charles F. Glore, Jr., died in 1976. By his will, Charles left his residuary estate in trust to his widow as the income beneficiary with the remainder to the Glore Fund. The will left nothing to his three children either outright or in trust. Alice died in 1982. By her will, she made a limited exercise of her power of appointment over the testamentary trust, appointing $260,000 to various charities. Surviving Hixon, were the two defendant grandchildren, the three defendant great-grandchildren, and four other great-grandchildren.

Harris Trust petitioned the court for instructions, and stated that

it believed the trust property was properly distributable to the grand-children. The court agreed, and ordered distribution outright in equal shares to Hixon's two grandchildren.

Preliminarily, the great-grandchildren review certain rules of will construction. These include ascertainment of the testator's intention, which should be given effect if no rule of law is violated. (*Crerar v. Williams* (1893), 145 Ill. 625, 34 N.E. 467.) Here, the testator's intention has been carefully heeded, keeping in mind all applicable rules of law. They also point to the presumption against disinheritance. (*Pontius v. Conrad* (1925), 317 Ill. 241, 148 N.E. 17.) We note, however, that any such presumption would not automatically require the inclusion of all lineal descendants. Additionally, the great-grandchildren emphasize a judicially favored construction which provides for a distribution of the estate which most closely conforms to the laws of descent. (*Dollander v. Dhaemers* (1921), 297 Ill. 274, 130 N.E. 705.) Finally, they rely on a construction principle which gives effect to all of a will's provisions and does not render any part meaningless. (*Chapman v. Cheney* (1901), 191 Ill. 574, 61 N.E. 363.) Such an effect should not be given, however, if it would violate a rule of law. See, *e.g., Bear v. Millikin Trust Co.* (1929), 336 Ill. 366, 168 N.E. 349.

The great-grandchildren initially contend that the trial court erred in finding the "to be added to *** trusts" language void. The language directs that the "share of each grandchildren [is] to be added to and administered in the same manner as any trust which may have been created in favor of such grandchild by his parents."

■ The great-grandchildren first contend that the court erred in finding the relevant language void for vagueness. They state that a power of appointment does not require the same degree of definiteness in identifying beneficiaries as a trust requires. (See *In re Estate of Schaaf* (1974), 19 Ill. App. 3d 662, 312 N.E.2d 348.) The language here, however, does not create a special power of appointment. The existence of a power may be implied where the language of the will shows an intent to create such a power. (*Illinois Christian Missionary Society v. American Christian Missionary Society* (1917), 277 Ill. 193, 115 N.E. 118.) The great-grandchildren urge that a power of appointment exists because the testator's intention was "to leave to the judgment of his daughters and their husbands whether each of his grandchildren was sufficiently mature to be able to receive and manage his or her share of the estate or whether it was advisable to continue to hold such grandchild's share in trust under such terms and conditions as his or her parents thought best." Such an interpretation of the language is strained. Hixon appears to do nothing more than

state that if the parents happened to have created other trusts, which they had not done at the time Hixon executed the will, then distribution would be more orderly if the trusts were administered in the same manner. In the alternative direction, Hixon merely acknowledges that, at the time he executed the will, his grandchildren were all minors, and the youngest should reach age 21 before distribution.

The will states that, if Hixon's daughters fail to dispose of the principal, the balance "shall be divided equally among surviving grandchildren." That direction is imperative, and varies considerably from the language used in the will to create powers of appointment for Alice, Ellen and Dorothy. Under this paragraph, the testator himself selected the beneficiaries and determined the shares each was to take. There is no showing here of Hixon's intent to create a power of appointment. The vagueness in the relevant language here involves a direction regarding administration. The surviving grandchildren's gifts were to be added to any trusts that their parents "may have" created for them. If none existed, the trust "shall continue" for a specified period. It is unclear, however, whether or not the parent-created trusts must name the grandchildren as exclusive beneficiaries or only as primary beneficiaries.

■ Generally, ambiguous language in trusts must be construed in light of the whole instrument. However, if unnecessary words or words of inferior import and questionable meaning serve to confuse or destroy known legal estates, the language may be disregarded. (*Bear v. Millikin Trust Co.* (1929), 336 Ill. 366, 168 N.E.2d 349; *Wheaton National Bank v. Aarvold* (1976), 38 Ill. App. 3d 658, 348 N.E.2d 520.) As discussed below, this clause violates several rules of law and therefore would confuse or destroy known legal estates. We conclude, therefore, that the ambiguous administrative direction included in this trust should be disregarded, and the alternative direction be applied.

■ The great-grandchildren next contend that the trial court erred in finding the "to be added to *** trusts" language void as a violation of the Rule against Perpetuities. That rule states that interests dependent upon a condition precedent must vest within 21 years of some life in being at the creation of the interest. (*Millikin National Bank v. Wilson* (1931), 343 Ill. 55, 174 N.E. 857; *Hopkinson v. Swaim* (1918), 284 Ill. 11, 119 N.E. 985.) To avoid the rule, it would have to appear, at the time the interest was created, that the interest would necessarily vest within that period of time. (*Millikin National Bank v. Wilson* (1931), 343 Ill. 55, 174 N.E. 857.) In the present case, the rule must be applied at the time of Hixon's death. If the remainder given to the surviving grandchildren is contingent upon the add-

ing of their gifts to "trusts which may have been created in favor of such grandchild by his parents," then the time of vesting is too remote. The last of the life interests would have to expire before it could be determined if there were existing parent-created trusts to which the Hixon gifts could be added for the surviving grandchildren. Since the remainder would not necessarily vest within the rule's prescribed period, the "to be added to *** trusts" language violates the Rule against Perpetuities and is void.

The "to be added to *** trusts" language is also void as a violation of the Statute of Wills. The Statute of Wills prohibits giving effect to dispositions which are testamentary in substance but not in form. An exception is when a separate document can be incorporated into the will. In order to incorporate the trusts created for the surviving grandchildren by their parents into Hixon's will, the following are necessary: (1) the will must refer to the paper to be incorporated as being in existence at the time of the execution of the will, in such a way as to reasonably identify it and as to show the testator's intent to incorporate it; (2) the document must in fact be in existence at the time of the execution of the will. (*Wagner v. Clauson* (1948), 399 Ill. 403, 78 N.E.2d 203.) The trusts created by Ellen for Hixon's grandchildren were not in existence at the time that Hixon's will was executed. Thus, any attempt to incorporate the language of any trust agreement created by Ellen into Hixon's will so that they can be "administered in the same manner" is unenforceable. Hixon's "added to" direction fails to comply with the requirements of the doctrine of incorporation by reference. The requirements of testamentary disposition under the Statute of Wills may also be avoided if the will merely creates a power of appointment. As discussed above, however, the "to be added to *** trusts" language does not create such a power.

The great-grandchildren next contend that they should take their deceased father's share under the Illinois antilapse statute, or because their father was a "surviving" grandchild, notwithstanding the fact that he did not survive all intervening life estates. They also maintain that they should take a share because great-grandchildren are included in the class of grandchildren.

The grandchildren counter that Florida law applies, and thus the Illinois antilapse statute cannot be used. Under Florida law, the antilapse statute does not apply to future interests. Consequently, the deceased grandchild's share would lapse and go to the living grandchildren and not to the great-grandchildren. In contrast, under Illinois' antilapse statute (Ill. Rev. Stat. 1985, ch. 110½, par. 4—11), the descendants of the deceased grandchild could take their father's share.

Thus, the great-grandchildren would receive the one-third share of their deceased father, Charles F. Glore, Jr., and the two grandchildren would each receive one-third shares.

In support of their argument that Florida law applies, the grandchildren point to the fact that Hixon's will was probated in Florida and that his will and tax returns recite that he lived in Florida. However, there were facts presented that he never abandoned his Illinois domicile. The trial court did not rule on this question. We find it unnecessary to review the conflicts-of-law analysis presented by the grandchildren because we agree with the grandchildren's alternative argument that even if Illinois law is applicable, the antilapse statute includes a relevant exception. That statute permits a descendant of a deceased member of a beneficiary class to take the deceased member's share "[u]nless the testator expressly provides otherwise in his will." Here, Hixon expressly provided otherwise when he stated that each member of the beneficiary class of grandchildren must be "surviving" in order to take a share. Charles did not meet the survivorship condition, as discussed below, and so the antilapse statute is inapplicable.

■ The great-grandchildren urge that their father was a "surviving" grandchild because he survived Hixon's daughters, Ellen and Dorothy, and did not need to survive Alice's death. They rely on the language of the will referring to the failure of "my said daughters" to dispose of the funds "prior to their decease." They contend that this language indicates Hixon's intention to have the term "surviving" determined at the time of his daughters' deaths, and not at the death of his wife, who is not referred to in this paragraph of the will. We agree with the trial court, however, that the reference to "their decease" merely refers to the necessary inquiry as to whether the daughters exercised their powers of appointment, and does not set the time of vesting of the grandchildren's interests. A condition of survivorship generally applies to the intervening estates. (*Horton v. Ferris* (1962), 24 Ill. 2d 32, 179 N.E.2d 680; *O'Connell v. Gaffney* (1962), 23 Ill. 2d 611, 179 N.E.2d 647.) Charles survived the subsequent life-income interest, that of his mother and aunt. However, he failed to survive the first life-income interest, that of his step-grandmother. We agree with the trial court that Hixon gave the life tenants the power to completely distribute the trust principal, and that Hixon thus indicated an intent to allow the life tenants to exercise that power without being encumbered by the necessity of defeating an existing estate. If Charles' interest were to vest upon the death of Hixon's daughters before Alice's life estate terminated, this would limit

Alice's power as a life tenant. Hixon's will does not indicate that he intended such a limitation. Consequently, Charles would have had to survive all intervening life estates in order to have been included in the class of "surviving grandchildren."

■ The great-grandchildren also argue that Hixon's overall plan of distribution indicates that the class of "surviving" members was to be determined at the deaths of Ellen and Dorothy. They point out that at the time of Hixon's death Ellen was 36 years old, Dorothy was 38 years, and the three grandchildren were minors. They argue the "most likely course of events" which Hixon believed to be "logical" and "assumed" would happen was that his wife would die first, then his daughters, and finally his grandchildren. This assumption fails to note that Alice was only several years older than her two stepdaughters, that the two sisters lived to be nearly 80 years old, that Alice lived to be 100 years old, and that Charles lived to middle age. The ages of death fail to evidence any highly unusual occurrence that completely disrupted the testator's plan of distribution. Hixon's wife, daughters, and surviving grandchildren were all provided for under the testamentary trust, as he planned.

■ Finally, the great-grandchildren urge that the definition of "grandchildren" includes great-grandchildren. The term should be given its ordinary meaning (*McGlothlin v. McElvain* (1950), 407 Ill. 142, 95 N.E.2d 68), which limits "grandchildren" to children of a son or daughter and excludes more remote descendants unless a contrary intent is manifested (*Wills v. Southwell* (1929), 334 Ill. 448, 166 N.E. 70; see also *Bushman v. Fraser* (1926), 322 Ill. 579, 153 N.E. 611; see generally Annot., 51 A.L.R.3d 1250 (1973)). We find nothing in Hixon's will that would indicate an intent contrary to the general rule. In fact, inclusion of the word "surviving" immediately preceding "grandchildren" indicates Hixon's intent to limit the gift to his daughters' children, and not to bypass the condition and extend the gift to all lineal descendants.

For the reasons stated, the judgment of the circuit court of Cook County directing the trustee to distribute a testamentary trust to the testator's two surviving grandchildren is affirmed.

Judgment affirmed.

RIZZI, P.J., and McGILLICUDDY, J., concur.