**FIRST DIVISION**
**AUGUST 06, 2007**

No. 1-06-0820

| | |
|---|---|
| IN RE ESTATE OF | Appeal from the |
| | Circuit Court of |
| JOHN J. PHELAN, | Cook County, |
| | Illinois, County |
| Deceased | Department, Probate |
| | Division |
| (Nora Phelan Clifford, | |
| | |
| Plaintiff-Appellant and | |
| Cross-Appellee, | |
| | |
| v. | No. 00 P 10864 |
| | |
| Jimmie "Red" Baskin, a/k/a Jimmy Baskin, | |
| as Executor of the Will of John Phelan, | |
| and as Successor Trustee of the | |
| Declaration of Trust of John Phelan, | |
| dated, July 7, 2000, for the benefit of | |
| Karen Phelan, Joseph Phelan, Ryan | |
| Phelan, Nora Phelan Clifford and Nellie | |
| Phelan Wilson; Anthony J. D'Alexander, | |
| as Trustee of the MJRNN Irrevocable | |
| Trust dated June 1, 1999, for the | |
| benefit of Karen Phelan, Joseph Phelan, | The Honorable, |
| Ryan Phelan, Nora Phelan Clifford and | Jeffrey A. Malak, |
| Nellie Phelan Wilson, Karen Phelan, | Judge Presiding. |
| Joseph Phelan, Ryan Phelan, Nellie | |
| Phelan Wilson, Wyatt Wilson, and Joseph | |
| Patrick Clifford, | |
| | |
| Defendants-Appellees and | |
| Cross-Appellants). | |

JUSTICE GARCIA delivered the opinion of the court.

John J. Phelan established two separate trusts to provide for his wife and their two minor sons and his two adult daughters from prior marriages. In the first trust, MJRNN Irrevocable Trust (MJRNN Trust), he included his two adult daughters as beneficiaries. In the second, the revocable Declaration of Trust (Revocable Trust), he provided for his wife and two minor sons but did not provide for his two adult daughters. This appeal concerns the validity of those two trusts and the pourover provision of his will.

The plaintiff, Nora Phelan Clifford, one of the two daughters, appeals from an order of the trial court granting the defendants' motion for a finding pursuant to section 2-1110 of the Code of Civil Procedure (735 ILCS 5/2-1110 (West 2002)) on her reformation claims of her amended complaint and amended petition. The plaintiff contends she presented sufficient evidence to establish a prima facie case to reform both the MJRNN Trust and the Revocable Trust.

In the cross-appeal, the defendants, specifically Jimmie Baskin, acting as executor of the will and trustee of the Revocable Trust, argue that the trial court erred when it found

that the Revocable Trust was not in existence at the time the decedent, John Phelan, executed his will. Based on this finding, the trial court determined that the pourover residuary provision of the will failed, resulting in the residue of the estate passing according to the laws of descent and distribution as if the estate were intestate.

Because we find the plaintiff has failed to carry her burden during her case in chief to warrant reformation of either trust, we affirm the trial court's judgment against the plaintiff. Because we find the Revocable Trust was in existence at the time the will was executed, we reverse the trial court's judgment on the cross-appeal.

BACKGROUND

The decedent, John Phelan, died on November 27, 2000. He was survived by his wife, Karen Phelan, their two minor sons, Joseph and Ryan, and two adult daughters from previous marriages, the plaintiff and Nellie Phelan Wilson. Phelan provided for the distribution of his assets in the MJRNN Trust, the Revocable Trust, and his will.

In 1999, Phelan contacted his brother-in-law Anthony D'Alexander and asked him to prepare an irrevocable life insurance trust for him. The trust, known as the MJRNN Trust, was to be funded with life insurance proceeds of $1.3 million and

**3**

it named, among others, the plaintiff and Wilson as beneficiaries. Regarding the funding of a trust with proceeds of a life insurance policy, section 2035 of the Tax Code (26 U.S.C. §2035 (2006)) provides that if an individual owns or has incidence of ownership in an existing life insurance policy and gives the policy away within three years of his death, the proceeds of the policy will be included in his estate. This is true regardless of whether he transfers ownership to another individual or to a trust. See 26 U.S.C. §2035 (2006). In accordance with section 2035 of the Tax Code, the MJRNN Trust provided that if Phelan died within three years of giving up incidence of ownership of the insurance policies that formed the corpus of the trust, the proceeds of those policies would be distributed to the personal representative of the Phelan estate, not the trustee of the MJRNN Trust.

At oral argument, the defendants' attorney explained that one consequence of the three-year rule was that the Phelan estate would be subject to a 50% estate tax that would reduce the value of Phelan's insurance policies from $1.3 million to $650,000. He further explained that the only way Phelan could have avoided the ramifications of the three-year rule would have been to have established the trust before he purchased the life insurance policies. Phelan, however, had already purchased the life

**4**

insurance policies by the time he sought to create the irrevocable trust so the application of the three-year rule was unavoidable short of purchasing replacement insurance polices after the creation of the MJRNN Trust.

Regarding Phelan's understanding of the three-year rule provision of the MJRNN Trust, D'Alexander testified that he and Phelan discussed the three-year rule and that Phelan understood the consequences of that provision. In addition, Alan Bruggeman, who prepared Phelan's will and Revocable Trust, testified in a deposition that Phelan understood the consequences of the three-year rule and that he only wanted to provide for the plaintiff and Wilson through the MJRNN Trust and only if it succeeded. His main concern was to provide for his minor sons.

Although the MJRNN Trust was dated June 1, 1999, D'Alexander testified that it was not signed until sometime after that date. Phelan died in November 2000, less than three years after the transfer of the insurance policies to the MJRNN Trust. In accordance with the three-year rule provision of the MJRNN Trust, the proceeds of the trust were distributed to the personal representative of Phelan's estate and none of the beneficiaries under the MJRNN Trust received a distribution.

In May or June 2000, Phelan asked Bruggeman to review the MJRNN Trust and prepare a will and trust for him. After

**5**

discussing each provision of the will and the Revocable Trust, Bruggeman faxed drafts to Phelan on July 7, 2000. Phelan signed both documents and returned them to Bruggeman with some changes made in ink. Bruggeman told Phelan that he would prepare clean copies of each document for him to sign, but Phelan indicated that drafts that were signed were sufficient.

The Trustee of the Revocable Trust was the residuary beneficiary of Phelan's estate pursuant to Article IV of his will. That pourover clause provided:

> "I give the residue of my estate, excluding any property over which I have a power of appointment, to the trustee acting under that certain [Revocable Trust] of John Phelan dated July 7, 2000, to be added to the principal held in trust thereunder as such [Revocable Trust] exists as of the date of my death to be administered pursuant to the terms and conditions of said [Revocable Trust] as they exist as of this date, which terms and conditions are hereby expressly incorporated by reference."

In his deposition, Bruggeman testified that he believed that the Revocable Trust was funded on the date it was signed.

Although he did not prepare any transfer documents, he testified that he believed that a deed in trust had been prepared.

On July 7, 2000, Phelan signed the will in the presence of Karen McGinnis, Barbara Vest, and Gwenda Landingham. He signed the will in the general office area of the building where he worked and each witness also signed it at that time. McGinnis and Vest testified that Phelan signed more than one document that day, but they only witnessed and signed the will. Vest also testified that D'Alexander and Michael Gavin were not present when the will was signed. The will was notarized by D'Alexander sometime after it was signed in the presence of others.

Phelan signed the Revocable Trust in the presence of Gavin and D'Alexander in his personal office. Gavin signed the trust as a witness, while D'Alexander notarized it. Gavin testified that he did not remember for certain when the trust was signed, but noted that it was dated July 7, 2000. He also indicated that he was not present when the will was signed.

Phelan's will was admitted to probate on January 8, 2001, and Baskin was appointed supervised executor of the estate. On July 6, 2001, the plaintiff filed a petition to contest the will and trusts. Wilson filed a will contest, alleging that the Revocable Trust was a forgery. Baskin moved to dismiss both actions. The trial court granted the motion in part and allowed

plaintiff and Wilson leave to amend their complaints.

On September 3, 2002, the plaintiff filed her first amended complaint, requesting reformation and construction of the MJRNN Trust. She also filed her amended petition regarding the Revocable Trust and the will, consisting of five counts: (1) reformation of the Revocable Trust; (2) lack of funding of the Revocable Trust; (3) forgery of the Revocable Trust; (4) declaratory judgment concerning the pourover clause of the will; and (5) construction of the Revocable Trust. Wilson also filed an amended contest, alleging forgery of the Revocable Trust. On March 25, 2004, Wilson's will contest and count III of the plaintiff's amended petition were dismissed by order of the trial court.

The remaining parties then moved for summary judgment, which the trial court denied. The case proceeded to trial. Following the plaintiff's presentation of evidence, the defendants moved for a finding in their favor pursuant to section 2-1110 of the Code. On February 14, 2006, the trial court granted the motion as to the plaintiff's amended complaint. The court held that the reformation or construction of the MJRNN Trust was not appropriate or possible because the trust had no funds. The court also granted the motion as to count I of the amended petition concerning reformation of the Revocable Trust.

**8**

On May 7, 2006, following trial, the trial court held: (1) the Revocable Trust was not in existence as the time of the execution of the will and, therefore, failed as a valid inter vivos trust; (2) because the Revocable Trust was not in existence, it could not be incorporated by reference into the will and could not be considered a testamentary trust; (3) because the residuary portion of the will consisted of the pourover clause in favor of the Revocable Trust, that clause also failed; and (4) the residuary portion of the estate was meant to pass through the will, but because the Revocable Trust was not in existence, the residue of the estate thereunder would pass according to the laws of descent and distribution as if the estate were intestate. The court made no findings concerning counts II (lack of funding) and V (construction) of the amended petition because the court's decision concerning count IV (declaratory judgment of pourover clause of will) disposed of those issues. This appeal followed.

ANALYSIS

I. Plaintiff's Appeal

In her appeal, the plaintiff argues that the trial court erred in granting the defendants' section 2-1110 motion resulting in the dismissal her amended complaint and count I of her amended petition. Section 2-1110 of the Code provides:

**9**

No. 1-06-0820

> "In all cases tried without a jury,
> defendant may, at the close of plaintiff's
> case, move for a finding or judgment in his
> or her favor.  In ruling on the motion the
> court shall weigh the evidence, considering
> the credibility of the witnesses and the
> weight and quality of the evidence."  735
> ILCS 5/2-1110 (West 2002).

When ruling on a section 2-1110 motion, a trial court applies a two-prong analysis.  Under the first prong, the court determines whether, as a matter of law, the plaintiff presented a prima facie case.  A plaintiff establishes a prima facie case when she proffers some evidence on every element essential to her cause of action.  People ex rel. Sherman v. Cryns, 203 Ill. 2d 264, 275, 786 N.E.2d 139 (2003).  Because this presents a question of law, we review such a determination by the trial court de novo.  Under the second prong, the trial court acts as the finder of fact to determine whether the plaintiff presented a prima facie case at the close of her case under the totality of the evidence.  In re Estate of Goldstein, 293 Ill. App. 3d 700, 709, 688 N.E.2d 684 (1997).  As finder of fact, the trial court must weigh all the evidence and determine the credibility of the witnesses and may draw reasonable inferences from the evidence

**10**

presented.  Because the court also considers evidence that is
favorable to the defendant, the "weighing process may result in
the negation of some of the evidence presented by the plaintiff."
Cryns, 203 Ill. 2d at 276.  After considering the totality of the
evidence, the court must determine whether there remains some
evidence as to each essential element of her cause of action.
Cryns, 203 Ill. 2d at 276.  Under this second-prong inquiry, we
will not reverse a trial court's ruling on appeal unless it is
against the manifest weight of the evidence.  Cryns, 203 Ill. 2d
at 276.

## A.  Standard of Review

In this case, the trial court did not specify whether its
decision to grant the defendants' section 2-1110 motion was
premised on the plaintiff's failure to present a prima facie case
or because, under the totality of the evidence, her
prima facie case did not survive.  The parties disagree as to
which approach the trial court took.  The plaintiff maintains
that the court held that the plaintiff failed to present a prima
facie case, while the defendants argue that the court considered
the weight and quality of the evidence.  Because our disposition
is the same in either instance, we will apply the de novo
standard.

## B.  Reformation Claims

**11**

In her amended complaint and amended petition, the plaintiff moved for the reformation of the MJRNN Trust and for the reformation of the Revocable Trust. The plaintiff alleged that Phelan wanted to provide for her and Wilson in his estate plan and mistakenly believed that he did. She contends that because Phelan's intentions were not carried out, he lacked understanding of his overall estate plan and specifically of the effects of the three-year rule provision of the MJRNN Trust and of the provisions of the Revocable Trust.

In Handelsman v. Handelsman, 366 Ill. App. 3d 1122, 1132-33 852 N.E.2d 862 (2006), Justice Bowman of the Second District examined the state of Illinois law regarding reformation of a trust.

> "Illinois courts have long held (with narrow exceptions not pertinent here) that '[a] will cannot be reformed to conform to any intention of the testator expressed in it, no matter how clearly a different intention may be proved by extrinsic evidence.' [Turek v. Mahoney, 407 Ill. 476, 482 ***; 95 N.E.2d 330 (1950); ***.]
>
> ***
>
> We acknowledge that [the] reasoning

**12**

[against reformation of a will] does not apply completely to will substitutes, as there is no statutory requirement that they be written, witnessed, and attested as wills must be (see 755 ILCS 5/4-3(a) (West 2002)). However, the effect of allowing the reformation of a will substitute is similar to that of allowing the reformation of a will: to enable a stranger to the original proceeding to 'make a will [substitute] for the [settlor].' [Decker v. Decker, 121 Ill. 341, 357, 12 N.E.2d 750 (1887); ***]. *** [E]ven in cases involving trusts that are not will substitutes, Illinois courts have stressed that the use of extrinsic evidence to nullify the effect of unambiguous language should be allowed 'only in extreme cases.' In re Estate of McInerny, 289 Ill. App. 3d 589, 598[, 682 N.E.2d 284] (1997).

Because the plaintiff does not address or even note the aversion in Illinois case law to reformation of trusts in general, we limit our discussion to the legal question before us - whether the plaintiff presented some evidence of Phelan's

**13**

mistaken belief that he provided for his adult daughters in his estate plan, as the plaintiff contends.

As to the plaintiff's amended complaint regarding the MJRNN Trust, we agree with the trial court that because the trust had no funds, no reformation was possible. Accordingly, the dismissal of the amended complaint was not error.

As to the plaintiff's claim seeking reformation of the Revocable Trust in her amended petition, the plaintiff argues that Phelan signed the Revocable Trust only because he was mistaken in his belief that he had provided for his daughters in the MJRNN Trust. We disagree.

The evidence was clear and ample that Phelan knew and understood that the MJRNN Trust would fail if he died within three years of establishing the trust. D'Alexander testified that he discussed the three-year rule provision of the MJRNN Trust with Phelan and that Phelan understood the provision and its implications. Bruggeman also testified that Phelan understood the ramifications of the three-year rule provision of the MJRNN Trust and that his daughters would receive a bequest only if the trust succeeded. While other drafting provisions may have been available, the plaintiff presented no evidence that Phelan did not understand the provision that was chosen. Because Phelan was informed of, and understood the implications of, the

**14**

three-year rule specifically provided in a provision of the MJRNN Trust, there is no evidence in the record of a mistaken belief on Phelan's part regarding providing for his daughters in either trust. Phelan knew that his adult daughters would not be provided for if the MJRNN Trust failed when he signed the Revocable Trust and the plaintiff did not present any evidence to show otherwise. Accordingly, we find the trial court did not err when it granted the defendants' section 2-1110 motion as to count I of the amended petition at the close of the plaintiff's case in chief.

## II. Defendants' Cross-Appeal

In their cross-appeal, the defendants argue the trial court erred in finding the Revocable Trust not in existence at the time of the execution of the will. Alternatively, relying on section 4-4 of the Probate Act of 1975 (755 ILCS 5/4-4 (West 2002)), the defendants argue that the incorporation of the Revocable Trust into the will was not necessary to create a valid inter vivos trust. Because we agree with the defendants as to their first contention, we do not address their alternative argument.

## A. Standard of Review

The defendants contend that the trial court's factual finding that the will was executed before the Revocable Trust was signed "was not supported by the evidence, but was based on a

**15**

negative inference." However, little is made of this claim. The defendants' principal contention is that the will and trust were signed together, contemporaneously, and therefore, the Revocable Trust was in existence when the will was executed. Without disturbing the trial court's findings of fact, we find the trial court's ruling that the Revocable Trust was not "in existence" at the time the will was executed raises a question as to the legal effect of the documents. This is a conclusion of law to which we apply a de novo standard of review. See Eychaner v. Gross, 202 Ill. 2d 228, 252, 779 N.E.2d 1115 (2002).

### B. "In Existence"

It has long been established that so long as certain requirements are met, a will may incorporate by reference other documents, including trusts, even where these documents were not executed with the formality required for the execution of a will. In re Estate of Meskimen, 39 Ill. 2d 415, 417, 235 N.E.2d 619 (1968). "A separate paper may under certain conditions be incorporated into and become a part of a will. The rule as to when such an instrument may be referred to in a will and become a part thereof has been settled in this State since Keeler v. Merchants Loan & Trust Co., 253 Ill. 528[, 97 N.E. 1061 (1912)], where the authorities were thoroughly examined, and the rule clearly established with the reason for each requirement."

**16**

Wagner v. Clauson, 399 Ill. 403, 409, 78 N.E.2d 203 (1948). A document will be incorporated into a will where: (1) the will itself refers to the document as being in existence at the time of the execution of the will and in such a way as to reasonably identify it and show the testator's intention to incorporate the document in the will and make it part thereof; (2) the document is in fact in existence at the time of the execution of the will; and (3) the document corresponds to the description in the will and is shown to be the instrument referred to therein. Meskimen, 39 Ill. 2d at 417-18. "All three requisites must coexist in order to incorporate an extrinsic document into a will." Meskimen, 39 Ill. 2d at 418.

In this case, the dispute centers on whether the Revocable Trust was "in existence" at the time of the execution of the will. The trial court held that because the Revocable Trust was not signed before the will was executed, it was not "in existence" for purposes of incorporation.

The evidence at trial established that all the controlling events occurred on July 7, 2000. Bruggeman sent Phelan both the will and the Revocable Trust via facsimile. The will was executed in the presence of McGinnis, Vest, and Landingham in the common area of Phelan's office building. The Revocable Trust was signed in the presence of Gavin and D'Alexander in Phelan's

**17**

personal office. Thereafter, D'Alexander notarized both the Revocable Trust and the will.

The defendants initially contend that the trial court's finding that the will was signed before the Revocable Trust "was not supported by the evidence, but based on a negative inference." We do not agree. That the will was signed before Phelan arrived at attorney D'Alexander's office where Phelan signed the Revocable Trust is unassailable. The trial court's finding that this was in fact the sequence of events is the only conclusion that can be drawn from the evidence. However, the real issue, and one we believe presents a question of law, is whether the Revocable Trust, for purposes of incorporation, had to be signed by Phelan to be "in existence" prior to the execution of the will.

While section 4-3(a) of the Probate Act (755 ILCS 5/4-3(a) (West 2002)) requires that "[e]very will shall be in writing, signed by the testator or by some person in his presence and by his direction and attested in the presence of the testator by 2 or more credible witnesses," the Trusts and Trustees Act (Trust Act) (760 ILCS 5/1 et seq. (West 2002)) has no similar requirement for trusts. Instead, the Trust Act merely provides that a trust may be "created by will, deed, agreement, declaration or other written instrument." 760 ILCS 5/2(1) (West

**18**

2002).

To support the trial court's holding that the Revocable Trust was not in existence when the will was executed, the plaintiff contends that a written trust must be signed to be "in existence." The plaintiff invokes the doctrines of noscitur a sociis and ejusdem generis to conclude that the phrase "other written instrument" of the Trust Act necessarily requires that written trusts be signed because "wills, deeds and written agreements must be signed in order to be valid." The plaintiff's argument is that because the Revocable Trust was not signed prior to the execution of the will, the Revocable Trust was not valid at the time the will was executed, and, therefore, the Revocable Trust was not "in existence" so as to be incorporated by reference into the executed will. Whether the plaintiff's argument regarding the validity of a written trust is legally sound, we need not resolve. But see Alexander v. Mermel, 27 Ill. App. 2d 281, 287, 169 N.E.2d 569 (1960) (in Illinois a trust in personal property need not be in writing); Catherwood v. Morris, 345 Ill. 617, 630, 178 N.E. 487 (1931) (no requirement that trusts in personal property be proved by some writing signed by the party declaring such a trust).

In our judgment, this case does not turn on any perceived statutory requirement that a written trust be signed to be valid.

**19**

Rather, this case turns on the requirements of the doctrine of incorporation by reference. See Harris Trust & Savings Bank v. Beach, 145 Ill. App. 3d 682, 689, 495 N.E.2d 1173 (1986). The test for determining whether an extrinsic document may be taken as part of the will has been settled since 1912 when Keeler was decided. The test stems "'[f]rom the proposition that a will may be written upon different pieces of paper *** [so] that a will may by reference incorporate into itself, as completely as if copied in full, some other paper which in itself is not a will for lack of execution.'" Keeler, 253 Ill. at 535, quoting W. Page, Page on Wills, §§162, 163, at 183 (1901). The requirement that such a "paper" be in existence at the time of the execution of the will is also explained: "'If this were not the rule, testator could, by executing a will and incorporating therein a document to be executed in the future, create for himself a power to dispose of his property in a testamentary manner by an instrument not executed in accordance with the Statute of Wills.'" Keeler, 253 Ill. at 536, quoting W. Page, Page on Wills, §§162, 163, at 184 (1901). Based on this long-established authority, our inquiry is limited to whether the test for incorporation of an extrinsic document into a will has been met here. If so, then the extrinsic document, the Revocable Trust in this case, is incorporated into the will "as if copied in full."

**20**

The plaintiff's argument that the Revocable Trust was not "in existence" because it was not signed when the will was executed is premised upon her challenge to the Revocable Trust's validity as a trust. Yet, no authority is presented for the contention that the validity of the trust must be established for it to be "in existence" for incorporation purposes, and our research has discovered none. Why the phrase "in existence" should be construed to mean something beyond its ordinary common meaning is unstated by the plaintiff. Certainly, the Revocable Trust had to be "in existence" in a literal sense before it could be signed. Why the Revocable Trust's existence for incorporation purposes should only begin with the testator's signature is unclear; we can think of no good reason and the plaintiff has offered none.

The two testamentary documents were sent to the testator in a simultaneous manner; he treated each as part of his total estate plan; each was notarized by the same attorney on the same date, so that each, the Revocable Trust and the pourover will, was signed contemporaneously with each other. Under these facts we find that the Revocable Trust was in existence at the time the pourover will was executed. While the plaintiff contends that the two documents were not signed contemporaneously, she points to no evidence to the contrary. Nor did the trial court find

**21**

that the documents were not signed contemporaneously. The trial court relied only on the sequence of the signing, that the will was signed before the Revocable Trust was signed, as the basis for its ruling. The law does not require the trust be signed before the will, where each is signed contemporaneously with the other, in order for the trust to be "in existence" for incorporation purposes. See Eschmann v. Cawi, 357 Ill. 379, 382, 192 N.E. 226 (1934) (for incorporation purposes, "[i]t makes no difference that the instrument *** has been defectively executed and not attested, if the [will] itself has been executed and attested according to law and contains proper reference to the other instrument"). It was mere happenstance that the will was signed before the Revocable Trust. Such happenstance is not enough to undo the estate plan Phelan so carefully devised to provide for his sons and wife where the long-established test for incorporation of an extrinsic writing into a will has been satisfied. The test itself is a demanding one that must be satisfied completely in order to make out a case for incorporation.[1] See Clauson, 399 Ill. 403 (1948) (extrinsic

---

[1] In fact, it is "generally assumed that section 43(a) [now section 4-4 of the Probate Act] was enacted because *** bequests to a trust which has been amended after the date of the will ***

**22**

document bore a later date than will); Bottrell v. Spengler, 343 Ill. 476, 175 N.E. 781 (1931) (no showing that deeds conveying real estate were intended to be part of will); Meskimen, 39 Ill. 2d at 417-18 (inter vivos trust independently significant so as not to be incorporated in will although referenced). We are aware of no authority requiring that the requisites for incorporation of a trust in a will be expanded to include an examination as to the trust's validity, as the plaintiff urges, under the Trust Act.

Even if we were to look to the Trust Act for guidance, the Act presents no obstacle to our holding. Section 18 of the Trust Act mandates that the Act shall be liberally construed. 760 ILCS 5/18 (West 2002). Requiring that a trust be signed before it may be "in existence" for purposes of being incorporated into a will would be a narrow, rather than a liberal, reading of the Act. In this regard we note that the plaintiff does not challenge the validity of the Revocable Trust as it exists in the record, both signed and witnessed.[2] Her contention is limited to the timing

---

would be impossible under the strict rules of incorporation by reference." Meskimen, 39 Ill. 2d at 421.

[2] We do not consider the plaintiff's separate contention, which we address below, that the Revocable Trust was not "in

**23**

of its signing _vis-a-vis_ the will.

On the record before us, there is no question but that all three requisites of the _Keeler_ test coexist here to incorporate the Revocable Trust into the will. Phelan's will refers to the existence of the Revocable Trust, reasonably identifying it and demonstrating Phelan's intention to make the Revocable Trust a part of the will. The existence of the Revocable Trust at the time of the execution of the will is amply spread of record from the point it was faxed with the will to Phelan on July 7, 2000. Finally, the Revocable Trust corresponds exactly to the trust referenced in Phelan's will. This is not a case where the testator sought to incorporate into a will a trust he would form later. Phelan was in possession of the Revocable Trust when he signed his will. Phelan signed the Revocable Trust before the will and the Revocable Trust were notarized by D'Alexander, one immediately after the other.

Our disposition is further supported by the underlying goals of testamentary construction -- to give affect to the testator's intention and avoid intestacy. See _Wise v. First National Bank_, 10 Ill. 2d 623, 627, 141 N.E.2d 1 (1957); _In re Estate of Stern_,

---

existence" because it was not funded at the time it was signed as a direct challenge to its validity.

**24**

263 Ill. App. 3d 1002, 1009, 636 N.E.2d 939 (1994) (clear intent of legislature in enacting section 4-4 of Probate Act was to prevent intestacy). Phelan had an estate plan. Although the MJRNN Trust failed, its failure was anticipated in Phelan's estate plan. The incorporation of the Revocable Trust into his will was the foundation of his estate plan.

The plaintiff also argues that the Revocable Trust was not "in existence" because, as she claims, it was not funded at the time Phelan executed his will. This claim likewise seeks to expand the test for incorporation to add an element that the trust be funded in order for it to be "in existence" to be made a part of the will. We reject this claim for the same reasons set out above. We have been presented with no authority that requires a trust be funded in order to be "in existence" so as to be made a part of a will.

We find as a matter of law that the trial court erred in ruling that the Revocable Trust was not in existence for purposes of incorporation into the pourover will. Accordingly, we reverse the trial court's order that the Revocable Trust failed and that the pourover clause of the will failed.

CONCLUSION

In summary, we affirm the order of the trial court dismissing the plaintiff's amended complaint and count I of her

amended petition. We reverse the trial court's order finding the Revocable Trust and pourover clause of the will failed. Because the trial court did not enter a ruling on counts II and V of the plaintiff's amended petition, we remand for further proceedings consistent with this opinion.

Affirmed in part and reversed in part; cause remanded.

McBRIDE, P.J., and R. GORDON, concur.