LYNETTE MOHN, Ex'r of the Estate of Everett Heaton, Deceased, Plaintiff-Appellant, v. INTERNATIONAL VERMICULITE COMPANY *et al.*, (Charter Consolidated, PLC, Defendant-Appellee).

Fourth District No. 4—86—0166

Opinion filed September 30, 1986.

James Walker, Ltd., of Bloomington, for appellant.

Robert G. Heckenkamp, of Heckenkamp, Simhauser & Drake, P.C., of Springfield, and Werner L. Polak, of Shearman & Sterling, of New York, New York, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the opinion of the court:

This cause involves an attempt to use offensive, nonmutual collateral estoppel to prevent defendant from litigating an issue in an Illinois court. Plaintiff, Lynette Mohn, appeals an order of the circuit court of Macoupin County which granted Charter Consolidated, PLC's (Charter's) motion to quash summons and dismiss for lack of personal jurisdiction. Plaintiff contends that the trial court erred when it failed to give collateral-estoppel (estoppel by verdict) effect to *Barber v. Pittsburgh Corning Corp.* (1983), 317 Pa. Super. 285, 464 A.2d 323, *cert. denied* (1984), 467 U.S. 1205, 81 L. Ed. 2d 346, 104 S. Ct. 2387. The *Barber* court held that Charter had sufficient contacts with Pennsylvania to be subject to personal jurisdiction under its long-arm statute. In reaching this determination, the *Barber* court disregarded the corporate structure of Cape Asbestos Fibres, Ltd. (Cape), and attributed its actions to Charter.

We affirm.

The factual context of the cause will be related only as necessary to an understanding of our disposition.

Everett Heaton, an employee of International Vermiculite Company in Girard, Illinois, filed a multicount complaint in McLean County naming Charter and a number of other defendants. Heaton alleged that they were involved in the mining, sale, and distribution of asbestos and asbestos products. Heaton also alleged that he contracted lung cancer as a result of work-related exposure to asbestos fiber and dust. Heaton died. Mohn was substituted as plaintiff.

On the motion of a defendant not involved in this appeal, the cause was transferred to Macoupin County. A second amended complaint, a wrongful-death action, was filed alleging that Charter and Cape were in the business of distributing asbestos and asbestos products to which Heaton was eventually exposed. The complaint also al-

leged that they knew exposure to asbestos dust could cause asbestosis and related diseases.

Charter, a holding company based in England, entered a special and limited appearance. It moved to quash service of summons and dismiss the complaint as to it for lack of personal jurisdiction. The affidavits and record before the trial court reveal the following facts. Charter is an investment holding company incorporated under the laws of the United Kingdom. Its stock is publicly traded. Charter has a wholly owned subsidiary, Charter Consolidated Investments Limited (CCI). CCI currently owns 67.3% of the stock in Cape.

Neither Charter nor its wholly owned subsidiary directly engaged in mining, production, marketing, or shipping of asbestos or asbestos products. Charter is not qualified to do business in Illinois. It does not: sell products, purchase goods or services, lease or own property, maintain a post office box, or have directors, officers, or employees in Illinois. It does not: pay taxes or franchise fees, have an Illinois bank account, or advertise in the State. It has never brought suit in Illinois.

Cape is also a publicly held company incorporated under the laws of the United Kingdom. Until 1979, it owned companies which mined and marketed asbestos. North American Asbestos Corporation, an Illinois corporation which voluntarily dissolved in 1978, was a wholly owned subsidiary of Cape. North American Asbestos Corporation sold asbestos products to plaintiff's employer.

From 1965 to 1969, while Charter's subsidiaries held a minority interest in Cape's stock, Charter nominated two directors to Cape's board of directors. During this time, Cape's board had 11 to 14 members. Since attaining majority interest, Charter has nominated three directors to Cape's board.

The companies maintain separate locations, bank accounts, and records. Under English law, their incomes are consolidated for statutory accounting purposes. Francis Howard, one of Charter's executive directors and a member of Cape's board of directors, stated that Charter is not involved in Cape's day-to-day operations nor with the day-to-day operation of Cape's subsidiaries.

Plaintiff argued below that Charter was Cape's alter ego. Therefore, the court should pierce the corporate veils of the subsidiary corporations and assert personal jurisdiction over Charter through Cape. Plaintiff also asserted Charter was collaterally estopped from relitigating the alter-ego issue.

The trial court found Charter was not Cape's alter ego and granted Charter's motion. It found that there was no just reason to delay enforcement or appeal of its order. In this court, plaintiff does

not question the trial court's factual assessment but argues the trial court erred in addressing the alter-ego issue and not finding Charter was estopped from relitigating its relationship with Cape.

We cannot agree.

A brief discussion of the *Barber* case is necessary. Barber was one of many plaintiffs who alleged that he contracted asbestosis while working for Pittsburgh Corning Corporation. He alleged that Cape and Charter were part of the chain of corporations responsible for the sale and distribution of asbestos products in Pennsylvania. Charter objected to the Pennsylvania court's personal jurisdiction over it. The trial court denied the motion due to Charter's own activities in Pennsylvania, the activities of its wholly owned subsidiary, Pandrol, which was licensed to do business in Pennsylvania, and on the theory that Charter was the alter ego of Pandrol and Cape.

The appellate court affirmed the lower court's actions. It stated that the basic question before it was whether Charter was subject to the jurisdiction of the Pennsylvania courts. After analyzing the import of the long-arm statute, it agreed that Charter was the alter ego of Cape. However, the court stated that even absent the Charter-Cape relationship, sufficient contacts existed to subject Charter to the jurisdiction of the Pennsylvania courts. (*Barber v. Pittsburgh Corning Corp.* (1983), 317 Pa. Super. 285, 301, 464 A.2d 323, 332.) The appellate court also noted that in ruling on the motion to dismiss and the objections to jurisdiction, it was obligated to view the evidence in the light most favorable to Barber.

Initially, we note that the collateral-estoppel effect of a foreign judgment is determined by the law of the State where the judgment was rendered. (*Nathan v. Tenna Corp.* (7th Cir. 1977), 560 F.2d 761, 763; Restatement (Second) Conflict of Laws sec. 95 (1970).) Thus, Illinois should apply Pennsylvania's law in initially determining the collateral-estoppel effect of the Pennsylvania judgment. However, Illinois and Pennsylvania apply the same rules in this area. A party may be estopped from relitigating an issue or question when: the issue in the former case and pending case are identical; a final judgment on the merits has been rendered in the cause asserted as a bar; and the party against whom estoppel is asserted is the same party or in privity with a party in the first cause. Additionally, the party against whom estoppel is asserted must have had a full opportunity to litigate the issue or question. (*Illinois State Chamber of Commerce v. Pollution Control Board* (1979), 78 Ill. 2d 1, 7, 398 N.E.2d 9, 12; *American Buyers Club of Danville, Illinois, Inc. v. Belmont Marketing, Inc.* (1981), 95 Ill. App. 3d 330, 332, 420 N.E.2d 207, 208; *In re Estate of*

*Ellis* (1975), 460 Pa. 281, 287, 333 A.2d 728, 731.) The doctrine will not be applied if injustice results to the party. (*Fred Olson Motor Service v. Container Corp. of America* (1980), 81 Ill. App. 3d 825, 401 N.E.2d 1098.) Collateral estoppel is most often asserted by a defendant in an effort to preclude relitigation of an issue which the plaintiff has previously litigated against another defendant and lost. (See generally *Fearon v. Mobil Joliet Refining Corp.* (1984), 131 Ill. App. 3d 1, 475 N.E.2d 549.) In the instant case, plaintiff seeks to preclude defendant from relitigating an issue.

■ We find that the issue in the instant case and the issue in *Barber* are not identical. Central to the *Barber* decision was whether Pennsylvania, under its long-arm statute, could assert jurisdiction over Charter. Here, application of the Illinois long-arm statute is involved. Stated another way, the question in *Barber* was whether Charter had sufficient contacts with the State of Pennsylvania to support the assertion of personal jurisdiction under Pennsylvania law. The question here is whether Charter has sufficient contacts with Illinois to support the assertion of personal jurisdiction under Illinois law. While we agree that many of the factors of the Charter-Cape relationship are the same, the evidentiary burdens of proof in addressing objections to jurisdiction are different in Illinois and Pennsylvania. In Illinois, plaintiff must allege factors upon which jurisdiction is based. Plaintiff bears the burden of proving jurisdiction. (*Bobka v. Cook County Hospital* (1983), 117 Ill. App. 3d 359, 360-61, 453 N.E.2d 828, 829.) In Pennsylvania as noted in *Barber*, the evidence is viewed most favorably toward the nonmoving party when a party objects to jurisdiction. *Barber v. Pittsburgh Corning Corp.* (1983), 317 Pa. Super. 285, 464 A.2d 323.

When different standards are applied to the same facts in reaching a legal conclusion, the issues are not identical for purposes of collateral estoppel. The parties also do not have a full opportunity to litigate the issue involved. (*Godare v. Sterling Steel Casting Co.* (1981), 103 Ill. App. 3d 46, 51, 430 N.E.2d 620, 623; *Fred Olson Motor Service v. Container Corp. of America* (1980), 81 Ill. App. 3d 825, 401 N.E.2d 1098.) We also note that the *Barber* court's determination to pierce the corporate veil was based upon factors which would be insufficient to disregard corporate structures under Illinois corporate law. See *Main Bank v. Baker* (1981), 86 Ill. 2d 188, 427 N.E.2d 94.

■ Additionally, the specific issue of the relationship between Charter and Cape was one of three bases of the *Barber* decision. To have collateral-estoppel effect, the determination of the issue must have been necessary to the finding or verdict in the initial action.

(*Spiller v. Continental Tube Co.* (1983), 95 Ill. 2d 423, 432-33, 477 N.E.2d 834, 838.) As this court noted in *Decatur Housing Authority v. Christy-Foltz, Inc.* (1983), 117 Ill. App. 3d 1077, 1082, 454 N.E.2d 379, 383:

> "To operate as an estoppel by verdict, it is absolutely necessary that there shall have been a finding of a specific fact in the former judgment or record that is material and controlling in that case and also material and controlling in the pending case. It must also conclusively appear that the matter of fact was so in issue that it was necessarily decided by the court rendering the judgment interposed as a bar by reason of such estoppel. If there is any uncertainty on the point that more than one distinct issue of fact is presented to the court, the estoppel will not be applied, for the reason that the court may have decided upon one of the other issues of fact."

▌ In *Barber*, the trial court based its findings on the determination of three separate fact questions, the Pandrol-Charter relationship, the Cape-Charter relationship, and Charter's direct activities in Pennsylvania. The appellate court noted that even absent the alter-ego finding, sufficient contact with the State of Pennsylvania existed for jurisdictional purposes. It is not appropriate to apply estoppel in the instant case because the decision could have rested on other factual grounds. Thus, the determination of this fact question was not necessary to the *Barber* judgment. *Spiller v. Continental Tube Co.* (1983), 95 Ill. 2d 423, 477 N.E.2d 834.

We note that, in *dicta*, the court in *Housing Authority v. YMCA* (1984), 101 Ill. 2d 246, 252, 461 N.E.2d 959, 962, in discussing collateral estoppel, noted that the resolution of the question asserted as a bar to relitigation in the second case needed to have been necessary "or material" to the first judgment. The "or material" language would markedly broaden the conditions under which estoppel by verdict could be asserted in Illinois. However, in reviewing the authority cited for that proposition within *Housing Authority* and other authorities discussing estoppel by verdict requirements, we find that courts have uniformly found that the former action operates as an estoppel "only as to those matters in issue, a determination of which was necessary to the finding or verdict rendered in the initial action." (*Spiller v. Continental Tube Co.* (1983), 95 Ill. 2d 423, 432-33, 447 N.E.2d 834, 838 (and the cases cited therein).) We do not interpret the language of *Housing Authority* as setting forth a new standard to assess the preclusive effect for estoppel by verdict purposes of an issue litigated in a former cause of action.

■ Finally, we note that in *Parklane Hosiery Co. v. Shore* (1979), 439 U.S. 322, 58 L. Ed. 2d 552, 99 S. Ct. 645, the Supreme Court held that the trial court was entitled to broad discretion in determining when to apply offensive collateral estoppel. When the application of offensive collateral estoppel would be unfair to a defendant, the trial judge should not allow its use. The situation in the instant case poses a danger of unfairness to the defendant especially considering the varying legal standards involved in the factual determination made. We note also that even in the Pennsylvania courts litigation of the alter-ego issue was not precluded for all purposes by the *Barber* decision. See *Parker v. Bell Asbestos Mines, Ltd.* (E.D. Pa. 1985), 607 F. Supp. 1397.

For the above reasons, we affirm the trial court.

Affirmed.

GREEN and SPITZ, JJ., concur.