In re ESTATE OF LOTTA ROSALIND STERN, Deceased (The People ex rel. Roland W. Burris, Attorney General, Petitioner-Appellant, v. Wanda A. Gibbs, Indiv. and as Independent Ex'r of the Estate of Lotta Rosalind Stern, et al., Respondents-Appellees).

First District (4th Division)   No. 1—91—2645

Opinion filed December 31, 1992.—Rehearing denied January 28, 1993.

---

*Justice Linn participated in the disposition of this case prior to his retirement.

Roland W. Burris, Attorney General, of Springfield (Rosalyn B. Kaplan, Solicitor General, and Jennifer A. Keller, Assistant Attorney General, of Chicago, of counsel), for appellant.

Etta J. Cole, of Chicago, for appellees.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

This appeal arises from an action filed by the Attorney General of Illinois seeking to contest the will of Lotta Stern. The trial court granted the Stern estate executor's section 2—619(a)(9) motion to dismiss based upon the executor's affirmative defense that the Attorney General lacked standing to bring the action. The central issue on appeal is whether the Attorney General has standing to file a will contest action in which specifically named charities are affected by the outcome of the contest.

We first summarize the pertinent facts. On May 23, 1980, Lotta Stern executed a trust entitled the "Lotta Stern Trust," in which she

designated herself as trustee and the Northern Trust Company as successor trustee. Pursuant to the terms of the trust, the trustee, upon her death, was to distribute $2,000 of the trust principal to each of the following named charities: the American Cancer Society, the American Red Cross, the Art Institute of Chicago, the Heart Association of Chicago, the Ravinia Festival Association, the Orchestral Association, and the Field Museum of Natural History. The trust agreement further provided that any remaining balance was to be distributed in equal shares to the American Cancer Society, the Art Institute of Chicago, the Ravinia Festival Association, the Orchestral Association, and the Field Museum of Natural History.

Stern executed a will on the same day that she executed the trust agreement. In her will, Stern devised the residue of her estate to the Stern Trust.

On September 1, 1989, Stern executed a second will which revoked the 1980 will and named Wanda Gibbs, Stern's housekeeper, as her executor. The 1989 will devised $1,000 to each of the named charities: the American Cancer Society, the American Red Cross, the Art Institute of Chicago, the Heart Association of Chicago, the Ravinia Festival Association, the Orchestral Association, and the Field Museum of Natural History. Stern devised her books to the Glencoe Public Library and $1,000 to St. Jude Temple. Additionally, in contrast to the 1980 will which devised the residue of her estate to the Stern Trust, the 1989 will devised the residue of her estate to Wanda Gibbs.

Stern died on December 30, 1989, and her 1989 will was admitted to probate. The Attorney General filed a petition to contest the 1989 will and claimed that Stern was unduly influenced by Gibbs and asked the court to set aside that will. The Attorney General's action was dismissed for lack of standing.

■ We begin by addressing the primary issue in this appeal, the scope of the Attorney General's power. The powers originate in common law and have been incorporated into our State's constitution, codified in various statutes, and interpreted by our courts. (*People ex rel. Hartigan v. E & E Hauling, Inc.* (1992), 153 Ill. 2d 473.) The Attorney General is held to be the sole officer authorized to represent the People of this State in any litigation in which the People of the State are the real party in interest, absent a contrary constitutional directive. *People ex rel. Scott v. Briceland* (1976), 65 Ill. 2d 485, 359 N.E.2d 149; Ill. Const. 1970, art. V, §15.

■ As it pertains to charities and the funds appropriated to them, the Charitable Trust Act provides the Attorney General with the authority to enforce and supervise charitable trusts. (Ill. Rev.

Stat. 1989, ch. 14, par. 51 *et seq.*) Prior to the enactment of the Charitable Trust Act, trustees of charitable trusts had no duty to make the Attorney General aware of the existence of the trusts or of the manner in which they were being operated. The purpose of the Act was to assist the Attorney General in carrying out his common law powers and duties to enforce charitable trusts and to assure that their funds were applied to their intended charitable use. *People ex rel. Hartigan v. National Anti-Drug Coalition* (1984), 124 Ill. App. 3d 269, 464 N.E.2d 690; *People ex rel. Scott v. George F. Harding Museum* (1978), 58 Ill. App. 3d 408, 374 N.E.2d 756.

Our supreme court has discussed the Attorney General's authority with reference to litigation involving charitable trusts in *In re Estate of Tomlinson* (1976), 65 Ill. 2d 382, 359 N.E.2d 109.

> "He has the authority to protect a charitable trust and its property either defensively, where an attack is made on its validity, or by an action as plaintiff, by securing the construction of the trust instrument. In a suit by others where the validity or the enforcement of a charitable trust may come into question the Attorney General should be made a party defendant." *Tomlinson*, 65 Ill. 2d at 387, 359 N.E.2d at 111.

In the instant case, Gibbs argues that the Attorney General does not have the authority to contest Stern's will because the Stern Trust is not a charitable trust. Gibbs classifies the trust as a "simple, uncomplicated inter-vivos trust, whose beneficiaries are specific, existing charities." According to Gibbs, this distinction is predicated upon the fact that the trust language does not specify that the funds are to be used for a charitable purpose.

■ We do not believe that there is any merit to Gibbs' assertion. A charitable purpose has been broadly defined to include almost anything that tends to promote the improvement or well-being of social man. (*In re Estate of Muhammad* (1987), 165 Ill. App. 3d 890, 520 N.E.2d 795.) Moreover, under the Charitable Trust Act, a corporation is considered a trustee of a charitable trust if it holds property "for any charitable purpose." Ill. Rev. Stat. 1989, ch. 14, par. 53.

■ Thus, funds which are appropriated for the benefit of society at large are considered to be held in a charitable trust, over which the Attorney General has regulatory authority. There is no requirement that express trust language be used to qualify the funds as a "charitable trust."

Lotta Stern made monetary bequests to specified charities which promote the improvement and well-being of society. The charities encompass medical, cultural, educational, and social benefits. We believe

the Attorney General has common law power and authority to safeguard these charitable assets.

Gibbs has further argued that the Attorney General has no standing to initiate a will contest because he only has authority in cases which involve the construction, enforcement, validity, or administration of charitable trusts. We find no merit to this argument. The essence of the Attorney General's action to contest Stern's 1989 will is to protect the monies which were allocated in Stern's 1980 will that poured over into the Stern Trust. The Stern Trust appropriated the residue of Stern's 1980 will to the specified charities. The Attorney General's role in the will contest is to protect charitable assets, and he is vested with that authority. By initiating a will contest, the Attorney General was properly attempting to assure that the funds which were initially bequeathed to the charities were applied to their intended charitable use.

Applying these principles to the case at bar leads us to conclude that the trial court erred in granting Gibbs' motion to dismiss the Attorney General's complaint for lack of standing. The Attorney General has authority to contest Stern's will in which funds appropriated for a charitable purpose are at issue.

■ Finally, Gibbs argues that the Attorney General's appeal is moot because during the pendency of this appeal, an order was entered in the probate court which found that the Stern Trust terminated on May 12, 1988, and the estate was entitled to the trust assets. Gibbs contends that since the trust terminated prior to Stern's death, the charities would take nothing under the 1980 will that the Attorney General is seeking to uphold.

The Attorney General responds by pointing to the provision of the probate code which specifies that if a testator's will bequeaths property to a trust which exists at the time of that will, and the trust is terminated prior to the testator's death, "the bequest *** shall take effect according to the terms and provisions of the instrument creating the trust as they existed at the time of the termination." (Ill. Rev. Stat. 1991, ch. 110½, par. 4—4.) In other words, termination of the Stern Trust prior to Stern's death would not affect the bequest of her residuary estate to the charities named in her 1980 will. The bequest would take effect according to the terms of the trust as they existed at the time of termination.

We believe that this appeal is not moot because even if the Stern Trust was terminated in 1988, the bequests to the charities which were made in Stern's 1980 will which poured over into the Stern Trust would remain enforceable.

Accordingly, the judgment of the circuit court is reversed and remanded for further proceedings.

Reversed and remanded.

JOHNSON and McMORROW,* JJ., concur.

*Justice McMorrow participated in this disposition prior to becoming a member of the supreme court of Illinois.