*In re* ESTATE OF LOTTA ROSALIND STERN, Deceased (Northern Trust Company of Chicago, Successor Trustee, Petitioner-Appellant, v. Wanda A. Gibbs, Indiv. and as Independent Ex'r of the Estate of Lotta Rosalind Stern, *et al.*, Respondents-Appellees).

First District (4th Division) No. 1—92—4220

Opinion filed June 2, 1994.

Gerald R. Singer, of Eckhart, McSwain, Silliman & Sears, of Chicago, for appellant.

Etta J. Cole and Alvin R. Becker, both of Chicago, for appellees.

JUSTICE THEIS delivered the opinion of the court:

Northern Trust Company, the successor trustee of the Lotta R. Stern Trust dated May 23, 1980, filed a petition to contest the 1989 will of Lotta R. Stern. Wanda Gibbs, executrix of the 1989 will, moved for summary judgment on this petition. (735 ILCS 5/2—1005 (West 1992).) The probate court granted Gibbs' motion on October 20, 1992. We now reverse the decision of the lower court and remand this case for further proceedings consistent with this opinion.

## FACTUAL BACKGROUND

On the sparse record before us, we note the following factual background. Lotta R. Stern executed a will on May 23, 1980. On that same date, she established the Lotta R. Stern Trust dated May 23, 1980 (hereinafter referred to as the Stern Trust). The will devised the residue of Lotta Stern's estate to the acting successor trustee of the "Lotta R. Stern Trust Dated May 23, 1980, as in effect at my death" and named Lotta Stern as the trustee of the Stern Trust and the Northern Trust Company as the successor trustee. In essence, then, Lotta Stern created a pour-over will in 1980. Northern Trust was also named as the executor of this will.

In 1989, Lotta Stern apparently executed a second will which revoked the 1980 will and named Wanda Gibbs as executrix of the will. After Stern's death, Northern Trust filed this petition to contest the validity of the 1989 will. In response, Gibbs filed a motion for summary judgment, contending that there was no issue of material fact and that Gibbs was entitled to judgment as a matter of law.

During a proceeding on a citation to discover assets issued against Northern Trust, the probate court entered an order on April 27, 1992, finding that the Stern Trust had terminated on May 12, 1988. Gibbs argued that, because the Stern Trust had terminated, Northern Trust no longer has an interest under the prior will and was therefore not an interested party who had standing to bring this action. The probate court granted Gibbs' motion for summary judgment.

Northern Trust appeals this decision of the lower court. The central issue raised in this appeal revolves around whether section 4—4 of the Probate Act of 1975 (Probate Act) (755 ILCS 5/4—4 (West 1992)) affects the Stern Trust. In other words, is it possible that, if the 1989 will is found to be invalid, the Stern Trust could be revived pursuant to section 4—4?

## ANALYSIS

The Meaning of Section 4—4

■ Section 4—4 of the Probate Act, entitled "Testamentary additions to trusts," states, in part:

> "If the trust is terminated prior to the testator's death by revocation of the trust or by revocation of that portion of the instrument creating the trust, the bequest or appointment shall take effect according to the terms and provisions of the instrument creating the trust as they existed at the time of the termination, unless the testator's will otherwise provides." 755 ILCS 5/4—4 (West 1992).

The parties ask us to interpret this portion of the statute. Before we begin our analysis of the meaning of this section, however, we note that section 4—4 is based upon section 1 of the Uniform Testamentary Additions to Trusts Act (1960). (8B U.L.A. 465 (1993).) Most States which have adopted section 1 have statutes that provide that either termination or revocation of a trust shall cause the bequest to lapse. Several State statutes do, however, provide that termination of the trust does not cause the bequest to lapse, unless the termination is by way of revocation. (8B U.L.A. 465-75 (1993), providing annotations for statutes of the District of Columbia and Washington. See also annotations from Florida, Maryland, North Carolina, Pennsylvania, and Texas.) Illinois, then, is unique in that no other State provides for the revival of a trust when it is terminated by revocation. The question then becomes whether the statute in Illinois provides for the revival of a trust only when it has been terminated by revocation.

When interpreting the language of a statute, the primary rule of construction for this court to follow is to ascertain and give effect to the intention of the legislature. (*Kraft, Inc. v. Edgar* (1990), 138 Ill. 2d 178, 189, 561 N.E.2d 656, 661.) "The legislative intent should be sought primarily from the language used in the statute." (*Abrahamson v. Illinois Department of Professional Regulation* (1992), 153 Ill. 2d 76, 91, 606 N.E.2d 1111, 1118.) Where the statutory language does not clearly reveal legislative intent, it is proper for a court to consider the legislative history of a statute. *Antunes v. Sookhakitch* (1992), 146 Ill. 2d 477, 484, 588 N.E.2d 1111, 1114.

Consequently, to discern legislative intent, we first turn to the language of the statute. Section 4—4 provides, "[i]f the trust is terminated *** by revocation of the trust or by revocation of that portion of the instrument creating the trust," the bequest may nonetheless take effect. However, the statute also states that the trust shall take effect according to the terms of the trust which "existed at the time of the termination." 755 ILCS 5/4—4 (West 1992).

■ Termination is a concept which is distinct from revocation. "A trust may be terminated before the expiration of its originally intended term in one of two ways, by revocation or by the exercise of a power of termination. Revocation is the resumption by the settlor of possession and title to the trust property, free of any obligation to the beneficiaries. A power of termination exists where a party other than the settlor, or the court, has the ability to cause the trust to cease and the trust property to be distributable to the settlor, the beneficiaries, or others." (G. Bogert & G. Bogert, Trusts and Trustees § 998 at 273 (2d rev. ed. 1983).) Yet, "terminated *** by revocation" and "termination" are used virtually interchangeably in section 4—4. Such alternate use of these terms in the statute creates ambiguity.

■ Because of the ambiguity which we find in this statute, we cannot determine the intent of the legislature from looking to the plain language of section 4—4. We therefore turn to extrinsic aids for assistance, looking to the legislative history of this section of the Probate Act.

During debates presented in the legislature, Senator Maragos, who presented this bill to the Senate, stated that this legislation was designed to continue the intent of the testator and to prevent intestacy. (80th Ill. Gen. Assem., Senate Proceedings, June 23, 1977, at 284-87.) Armed with this clear statement of the intent of the legislature, we conclude that the language of section 4—4 should be construed in such a way as to prevent intestacy wherever possible.

Intestacy can be prevented by reviving a trust which has been either terminated or revoked. Therefore, whenever possible, section 4—4 should operate to revive a testamentary trust which has been either terminated or terminated by revocation.

■ Having determined that section 4—4 revives a trust which is either terminated or terminated by revocation, we turn now to the facts of this case. If the 1989 will is found to be invalid, then the provisions of the 1980 will would control. The 1980 will provided that the residue of Stern's estate was to go to the Stern Trust "as in effect at my death." The probate court found, however, that the Stern Trust had terminated as of May 1988.

Section 4—4 nonetheless revives the Stern Trust. Reviving the Stern Trust should work to prevent the assets of Stern's estate from being distributed through the laws of intestacy, if the 1989 will is deemed invalid.

Moreover, in a related appeal brought by the Attorney General to contest the 1989 will of Lotta Stern, this court interpreted section 4—4 in a similar fashion and likewise concluded that the Stern Trust might be revived. (*In re Estate of Stern* (1992), 240 Ill. App. 3d 834, 608 N.E.2d 534 (hereinafter referred to as "*Stern 1*").) The parties to this case are bound by that decision.

In that appeal, the Attorney General filed a petition to contest Lotta Stern's 1989 will, charging that Gibbs exerted undue influence over Stern. Gibbs filed a motion to dismiss the Attorney General's petition, pursuant to section 2—619(a)(9) of the Illinois Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1992)), asserting that the Attorney General lacked standing to bring this action. The trial court granted Gibbs' motion and dismissed the Attorney General's action. (*Stern 1*, 240 Ill. App. 3d at 835, 608 N.E.2d at 535.) The Attorney General then filed an appeal which was heard and decided by this court after the probate court had granted Gibbs' motion for summary judgment in this case.

On appeal, this court rejected Gibbs' argument that the Attorney General's appeal was moot, stating:

"The Attorney General responds by pointing to [section 4—4] of the probate code ***. [Citation.] In other words, termination of the Stern Trust prior to Stern's death would not affect the bequest of her residuary estate to the charities named in her 1980 will. The bequest would take effect according to the terms of the trust as they existed at the time of termination.

We believe that this appeal is not moot because even if the Stern Trust was terminated in 1988, the bequests to the charities which were made in Stern's 1980 will which poured over into the Stern Trust would remain enforceable." *Stern 1*, 240 Ill. App. 3d at 838, 608 N.E.2d at 537.

The parties in this matter are bound by the doctrine of collateral estoppel. The doctrine of collateral estoppel applies when a party participates in two separate cases arising from different causes of action and some controlling fact or question material to the determination of both causes was decided against that party in the former suit. (*Cleveringa v. J.I. Case Co.* (1992), 230 Ill. App. 3d 831, 847, 595 N.E.2d 1193, 1205.) "The parties need not be identical in both cases, but the party against whom [collateral] estoppel is asserted must have been able to litigate the issue." (*Nagy v. Beckley* (1991), 218 Ill.

App. 3d 875, 883, 578 N.E.2d 1134, 1139; see also *Todd v. Katz* (1989), 187 Ill. App. 3d 670, 674, 543 N.E.2d 1066, 1068.) The doctrine of collateral estoppel should not be applied, however, if doing so would result in injustice to the party. *Mohn v. International Vermiculite Co.* (1986), 147 Ill. App. 3d 717, 721, 498 N.E.2d 375, 377.

Both Northern Trust and the Attorney General filed petitions to contest the 1989 will of Lotta Stern. At issue in both cases was the interpretation of section 4—4. Gibbs was a party to both actions and had an opportunity to fully litigate the merits of the question concerning the interpretation and application of section 4—4. It would not work an injustice to Gibbs were this court to find that the parties should be bound by the conclusion which was reached in the earlier proceeding.

We conclude, then, that if the 1989 will is found to be invalid, section 4—4 operates to revive the Stern Trust.

Northern Trust's Standing

■ Consequently, Northern Trust, as successor trustee of the Stern Trust, has a financial interest which would be affected by a contest over the validity of the 1989 will. Only an "interested person" can maintain this action under the Probate Act. (755 ILCS 5/8—1 (West 1992).) An "interested person" is defined in the Probate Act as follows:

> " 'Interested person' in relation to any particular action, power or proceeding under this Act means one who has or represents a financial interest, property right or fiduciary status ***." 755 ILCS 5/1—2.11 (West 1992).

Because Northern Trust has a financial interest in this case, Northern Trust is an "interested person" who can maintain this action under the Probate Act.

Gibbs' Remaining Arguments

■ Gibbs argues that the doctrine of collateral estoppel operates to prevent Northern Trust from raising these issues in this appeal. Gibbs points out that the probate court found that the Stern Trust terminated in 1988 and, because the Stern Trust was terminated, it cannot be affected by the terms of the 1980 will. We agree that the probate court's order indicating that the Stern Trust has terminated should be given collateral estoppel effect. However, if we give collateral estoppel effect to the probate court's order, then we are holding that the parties are precluded from relitigating the issue of whether the Stern Trust terminated in May 1988. But, as we have previously noted, section 4—4 operates to revive the Stern Trust and Northern Trust therefore remains an interested party.

Gibbs also asserts that the language "unless the testator's will otherwise provides," which appears in section 4—4, affects the disposition of this case. Gibbs argues that, because the 1980 will contained a statement which read "declaration of trust known as the Lotta R. Stern Trust Dated May 23, 1980, *as in effect at my death*," Stern's 1980 will "otherwise provides" such that section 4—4 cannot operate to revive this trust. We do not agree that this statement in the will means that Stern intended to provide that the Stern Trust should not be revived in the event that the trust was revoked or terminated. The phrase "as in effect at my death" does not indicate Stern's intention to make an alternate disposition of assets and would not serve to avert the possibility of the entire estate passing through intestacy. We therefore find Gibbs' argument here to be unpersuasive.

## CONCLUSION

In conclusion, we note that the clear intention of the legislature in enacting section 4—4 was to prevent intestacy. Section 4—4 should therefore be construed to revive a trust which has either been terminated or terminated by revocation. This construction of the statute means that, in the event that the 1989 will of Lotta Stern is found to be invalid, the Stern Trust would be revived. Consequently, Northern Trust is an interested party with standing to maintain this action.

We therefore reverse the decision of the probate court and reinstate Northern Trust's petition to contest the validity of the 1989 will.

Reversed and remanded.

HOFFMAN, P.J., and CAHILL, J., concur.