58 F.3d 303
 HAVOCO OF AMERICA, LTD., a Delaware Corporation, Plaintiff-Appellant,
v.
FREEMAN, ATKINS & COLEMAN, LTD., Marvin G. Freeman, Barry J.
Freeman, Robert F. Coleman, Robert C. Goldberg,
Kenneth P. Ross, and Susan D. Padove,
Defendants-Appellees.
 No. 94-2806.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 12, 1995.
Decided June 22, 1995.
Rehearing Denied July 24, 1995.
 
 Richard P. Campbell (argued), Anthony S. DiVincenzo, Campbell & DiVencenzo, Chicago, IL, for Havoco of America, Ltd.
 Stephen R. Swofford (argued), George W. Spellmire, Caroline A. Mondschean, D. Kendall Griffith, Hinshaw & Culbertson, Chicago, IL, for Freeman, Atkins & Coleman, Ltd., Robert F. Coleman, Robert C. Goldberg, Kenneth P. Ross.
 Stephen R. Swofford, George W. Spellmire, Caroline A. Mondschean, D. Kendall Griffith, Hinshaw & Culbertson, Chicago, IL, Barry J. Freeman, Highland Park, IL, for Marvin G. Freeman, Barry J. Freeman, Defendant-Appellee.
 George W. Spellmire, Caroline A. Mondschean, Hinshaw & Culbertson, Chicago, IL, Barry J. Freeman, Highland Park, IL, for Susan D. Padove.
 Before CUDAHY, ESCHBACH and RIPPLE, Circuit Judges.*
 RIPPLE, Circuit Judge.
 
 
 1
 Havoco of America, Ltd. ("Havoco") filed an attorney malpractice suit against the law firm of Freeman, Atkins & Coleman, Ltd. and several of its attorneys (collectively, "Freeman"). Havoco alleged that Freeman's failure to file a timely claim prevented Havoco from recovering from a defendant in the underlying litigation under tort, conspiracy, and breach of fiduciary duty theories. The district court granted summary judgment for Freeman. It reasoned that the jury's verdict on a contractual claim in the underlying litigation collaterally estopped Havoco from arguing that, absent Freeman's negligence in failing to file the complaint, it would have recovered under its other theories. For the reasons that follow, we reverse and remand for further proceedings.
 
 
 2
 * BACKGROUND
 
 A. Facts
 
 3
 The underlying litigation has been to this court on several occasions.[1] We assume familiarity with our earlier decisions, and set forth here only the factual background and procedural history directly relevant to our analysis of the attorney malpractice issue before us in this appeal.
 
 
 4
 In January 1981, the Freeman law firm filed suit on behalf of Havoco against Elmer Hill and his company, Hilco, Inc. Havoco alleged that the defendants had deprived it of the benefits of a multimillion dollar contract to supply coal to the Tennessee Valley Authority ("TVA"). In November 1981, after obtaining leave to amend, Freeman added Sumitomo Shoji America, Inc. ("Sumitomo") as a defendant. Havoco's amended complaint raised several claims against Sumitomo: conspiracy to defraud, tortious interference with contractual relations, fraud and deceit, breach of fiduciary duty, and breach of contract. With the exception of the breach of contract claim, each of these causes of action was subject to a five-year statute of limitations. By the time Freeman had filed Havoco's amended complaint, the five-year limitations period had expired.
 
 
 5
 In early 1989, Sumitomo moved for summary judgment on the ground that Havoco's tort and breach of fiduciary duty claims were time-barred. Havoco, which had retained new counsel, resisted the motion. On October 30, 1990, the district court ruled in Sumitomo's favor. Havoco of Am., Ltd. v. Hilco, Inc., 750 F.Supp. 946 (N.D.Ill.1990). It dismissed as time-barred all of Havoco's claims against Sumitomo, except the breach of contract claim. Havoco then amended its complaint. It proceeded to trial against Hill on tort, conspiracy, and breach of fiduciary duty theories. However, it proceeded against Sumitomo only on a breach of contract claim. This breach of contract claim alleged solely that Sumitomo had "failed to provide an irrevocable, transferable, revolving letter of credit to Havoco, as was provided for in paragraph 6 of the Sales Agency contract." R.51, Ex. I, p 41. Havoco contended that Sumitomo had breached the contract by posting monthly, non-revolving letters of credit. Sumitomo did not contest this issue. However, it argued that Havoco had waived its breach of contract claim by repeatedly accepting Sumitomo's non-revolving letters of credit.[2]
 
 
 6
 At the close of evidence, the district court instructed the jury on Havoco's theories of recovery and on Sumitomo's defense.[3] The jury was given two special interrogatories that related to Havoco's claim against Sumitomo. In response to the inquiry:
 
 
 7
 Did Havoco waive its breach of contract claim against Sumitomo by acquiescing in Sumitomo's performance of its agreement with Havoco?
 
 
 8
 the jury marked "yes." R.51, Ex. E. In response to the query:
 
 
 9
 If you find that Havoco suffered any damage, was it caused by Sumitomo failing to provide a revolving letter of credit?
 
 
 10
 the jury marked "no." Id. The jury awarded Havoco $15,000,000 on the counts against Hill. However, it found Sumitomo not liable on the breach of contract claim. Both Hill and Havoco appealed from portions of the decision that were adverse to them. We affirmed. 971 F.2d 1332 (7th Cir.1992). Hill subsequently declared bankruptcy. Havoco has been unable to collect any damages from him.
 
 B. District Court Proceedings
 
 11
 On February 3, 1993, Havoco brought an attorney malpractice suit against Freeman. The lawsuit alleged that Freeman committed malpractice by failing to name timely Sumitomo as a defendant to Havoco's tort action.[4] Freeman moved for summary judgment. It submitted that, in the underlying litigation, the jury specifically found in resolving the contract action that Havoco was not damaged by Sumitomo's failure to provide the revolving letter of credit. Freeman contended that this finding estopped Havoco from arguing that the same conduct damaged Havoco in tort. The district court granted Freeman's motion.[5] It first noted that each of the claims that had been dismissed in the underlying litigation would have required Havoco to demonstrate that Sumitomo caused Havoco to suffer damages. The court then noted that the jury in the underlying litigation found that Sumitomo had not damaged Havoco. The district court reasoned that the "same alleged activities by Sumitomo" had served as the basis for Havoco's contract and tort claims. R.71 at 11. Accordingly, it concluded, the jury's verdict collaterally estopped Havoco from claiming that it would have recovered damages from Sumitomo had its tort claims been presented to the jury.
 
 
 12
 Havoco filed a motion to reconsider. It submitted that Freeman's alleged malpractice had precluded Havoco from alleging that Sumitomo and Hill were coconspirators. Havoco claimed that, if it had been able to establish a conspiracy that included Sumitomo, it could have recovered the damages awarded against Hill from Sumitomo. The district court denied Havoco's motion. It reasoned that "[u]nder Illinois law, the basis of a civil conspiracy claim is the wrongful act alleged to have been done in furtherance of the conspiracy, not the conspiracy itself." R.77. The court then stated that the jury verdict in the underlying suit established that Sumitomo had not committed the alleged wrongful acts. Therefore, the court concluded, a jury could not have found Sumitomo to have been involved in any conspiracy.
 
 II
 DISCUSSION
 
 13
 We review the district court's grant of summary judgment de novo. All reasonable inferences must be drawn in favor of the nonmoving party. Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir.1995). We shall affirm the district court if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Id.; Boggs v. Adams, 45 F.3d 1056, 1059 (7th Cir.1995). Here, Freeman seeks summary judgment by invoking the affirmative defense of collateral estoppel. Freeman therefore has the burden of establishing that, on this record, the application of collateral estoppel requires that it prevail in this malpractice action as a matter of law. See Freeman United Coal Mining Co. v. Office of Workers' Compensation Program, 20 F.3d 289, 294 (7th Cir.1994) (noting that collateral estoppel is an affirmative defense and that the party asserting it has the burden of establishing its applicability).
 
 A.
 
 14
 The parties agree that Illinois law governs the substantive issues in this diversity suit. Under Illinois law, a plaintiff alleging legal malpractice must prove "that the defendant attorney owed [the] plaintiff a duty of due care arising from the attorney-client relationship, that the defendant breached that duty, and that as a proximate result, the plaintiff suffered injury." Sexton v. Smith, 112 Ill.2d 187, 97 Ill.Dec. 411, 413-14, 492 N.E.2d 1284, 1286-87 (1986); Nika v. Danz, 199 Ill.App.3d 296, 145 Ill.Dec. 255, 264, 556 N.E.2d 873, 882 (1990). When a plaintiff alleges that an attorney was negligent in failing to file a timely cause of action, he must "recreate and litigate the action which was never filed" to establish what the result "should have been." Danz, 145 Ill.Dec. at 264, 556 N.E.2d at 882.
 
 
 15
 As this case comes to us, the only issue before us is whether Freeman's alleged malpractice caused Havoco any injury. The district court was of the view that Freeman's failure to file timely various claims against Sumitomo could not have injured Havoco because the jury verdict on the contract count in the underlying litigation established that Sumitomo had not damaged Havoco. Havoco submits, however, that the district court should not have permitted Freeman to rely on collateral estoppel in this context. In Havoco's view, the breach of contract claim which it presented to the jury in the underlying litigation was limited to Sumitomo's failure to provide a revolving letter of credit. Havoco therefore contends that its other claims against Sumitomo, which were held to be barred by the statute of limitations because of Freeman's alleged negligence, involved other conduct. Thus, Havoco argues, these claims were not coextensive with the breach of contract claim that it presented to the jury. Havoco submits that, were it not for Freeman's negligence, it could have established that Sumitomo and Hill were coconspirators. Freeman responds that the district court's instructions in the underlying litigation invited the jury to consider "whether Sumitomo breached any contract obligation," R.65, Ex. D, not simply whether Sumitomo breached the revolving letter of credit provision. In Freeman's view, Sumitomo would have breached its contractual duty to act as Havoco's exclusive agent, as well as its contractual duty of good faith and fair dealing, had it engaged in any of the conduct that formed the basis of Havoco's tort, conspiracy, or breach of fiduciary duty claims. Thus, Freeman concludes, the jury's finding of no liability on the breach of contract claim forecloses any argument that Havoco could have recovered against Sumitomo under these additional theories.
 
 B.
 
 16
 In order to determine whether the jury's verdict in the underlying litigation precludes Havoco's present claim against Freeman, we must decide whether, under the circumstances presented here, Freeman can assert the affirmative defense of collateral estoppel. We apply, as do the majority of the circuits,[6] federal principles of preclusion.[7]
 
 
 17
 Collateral estoppel refers to a judgment's effect of " 'foreclosing relitigation in a subsequent action of an issue of law or fact that has been actually litigated and decided in the initial action.' " Freeman United Coal Mining Co., 20 F.3d at 293 (quoting La Preferida v. Cerveceria Modelo, S.A. de C.V., 914 F.2d 900, 905 n. 7 (7th Cir.1990)); see also Montana v. United States, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979) ("Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."). Collateral estoppel will apply if: (1) the issue sought to be precluded is the same as that involved in the prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the final judgment; and (4) the party against whom estoppel is invoked was fully represented in the prior action. Meyer v. Rigdon, 36 F.3d 1375, 1379 (7th Cir.1994); Freeman United Coal Mining Co., 20 F.3d at 293-94; La Preferida, 914 F.2d at 906. As Professors Wright, Miller and Cooper point out, it is very often necessary to consult substantive principles of state law in order to determine the scope of the earlier judgment or the parties who are bound by its terms.[8] As we have noted earlier, collateral estoppel is an affirmative defense. Therefore, in seeking summary judgment, Freeman, the defendant in this action, has the burden of establishing each of these elements.
 
 
 18
 Applying these principles,[9] we find ourselves in respectful disagreement with the district court as to the propriety of summary judgment on this record. Havoco's breach of contract claim in the underlying litigation focused upon Sumitomo's alleged breach of the revolving letter of credit provision. Count V of Havoco's Sixth Amended Complaint, the one that governed the trial proceedings, including the jury deliberations, was entitled "Breach of Contract." It stated:
 
 
 19
 Sumitomo breached said Sales Agency contract because Sumitomo failed to provide an irrevocable, transferable, revolving letter of credit to Havoco, as was provided for in paragraph 6 of the Sales Agency contract.
 
 
 20
 R.51, Ex. I, p 41. This was Havoco's only allegation of a breach by Sumitomo. Similarly, the jury's special interrogatories focused on the revolving letter of credit provision. One form specifically asked the jury to indicate whether "Havoco suffered any damage ... caused by Sumitomo failing to provide a revolving letter of credit." R.51, Ex. E. The other form asked whether Havoco waived its breach of contract claim against Sumitomo "by acquiescing in Sumitomo's performance of its agreement with Havoco." Id. Although the latter query does not specifically reference the revolving letter of credit provision, an examination of the record makes clear that Sumitomo's waiver argument was addressed solely to that obligation. See Havoco of Am., Ltd. v. Sumitomo Corp. of Am., 971 F.2d 1332, 1337-38 (7th Cir.1992) (discussing the waiver issue on the direct appeal from the underlying litigation).
 
 
 21
 By contrast, our examination of the record reveals that the claims against Sumitomo that Havoco was unable to present to the jury alleged additional conduct. More precisely, Havoco's proposed conspiracy count alleged that Sumitomo conspired to eliminate Havoco as a major supplier of coal to the Tennessee Valley Authority. Sumitomo's breach of the revolving letter of credit agreement was only one of the overt acts Sumitomo allegedly committed in furtherance of the conspiracy; Havoco's proposed complaint also alleged that Sumitomo acted in furtherance of the conspiracy by misrepresenting Havoco's intentions to the TVA, by misrepresenting, concealing, suppressing, and omitting Havoco's financial status to the TVA, by misrepresenting the TVA's negotiating position to Havoco, by conducting negotiations in bad faith, and by breaching the sales agency contract through an agreement to represent R & F Coal Company as sales agent. See R.51, Ex. B, pp. 6-10. Similarly, Havoco's proposed fraud and deceit count alleged that it agreed to assign its contract with the TVA to another coal company "in reliance upon the fraudulent misrepresentations and omissions made by [Sumitomo] as detailed hereinabove." See R.51, Ex. B, p 35.
 
 
 22
 We cannot say, on this record, that the conduct at issue in the counts Havoco was barred from presenting to the jury was coterminous with Sumitomo's breach of the revolving letter of credit agreement. Only the revolving letter of credit issue and, consequently, only conduct relevant to it, was "actually litigated" by the parties.[10] We cannot accept Freeman's contention that the jury necessarily found implicitly that Sumitomo had failed to act as alleged in Havoco's proposed non-contractual counts when it determined that Sumitomo had not damaged Havoco by its handling of the letter of credit.[11] The jury's finding that Sumitomo did not damage Havoco by breaching the revolving letter of credit agreement, therefore, did not foreclose the possibility that Sumitomo injured Havoco in some other fashion.[12] Accordingly, on the record before us, we cannot say that Freeman has met its burden of establishing that the underlying litigation on Havoco's breach of contract claim provides a defense of collateral estoppel for Freeman on the allegation that it negligently failed to file Havoco's non-contractual claims against Sumitomo.
 
 Conclusion
 
 23
 For the foregoing reasons, we reverse the judgment of the district court. The case is remanded for further proceedings consistent with this opinion.
 
 REVERSED and REMANDED
 
 
 *
 This opinion was circulated among all judges of this Court in regular active service pursuant to Circuit Rule 40(f) on the issue of whether state or federal preclusion principles govern in successive diversity cases. No judge favored rehearing en banc. Judge Flaum did not participate in any action or decision in this matter
 
 
 [1]
 See Havoco of Am., Ltd. v. Sumitomo Corp. of Am., 971 F.2d 1332 (7th Cir.1992); Havoco of Am., Inc. v. Hilco, Inc., 799 F.2d 349 (7th Cir.1986); Havoco of Am., Ltd. v. Hilco, Inc., 731 F.2d 1282 (7th Cir.1984); see also Havoco of Am., Ltd. v. Shell Oil Co., 626 F.2d 549 (7th Cir.1980)
 
 
 [2]
 See Havoco of Am., Ltd. v. Sumitomo Corp. of Am., 971 F.2d 1332, 1337 (7th Cir.1992)
 
 
 [3]
 With respect to Havoco's contractual claim against Sumitomo, the district court instructed the jury, in pertinent part:
 Defendant Sumitomo raises an affirmative defense of acquiescence. Sumitomo contends that Havoco waived its right to insist on a revolving letter of credit by acquiescing in Sumitomo's conduct. Havoco denies that it acquiesced in Sumitomo's conduct.
 In considering whether Sumitomo breached any contract obligation, you should consider whether any of the terms, conditions, or other rights under the contract were waived by Havoco, or whether Havoco acquiesced to a breach of the contract.
 R.65, Exs. A-D. We cannot ascertain the full extent of the jury instructions from the record before us. The record does not contain all of the jury instructions from the underlying litigation. Nevertheless, as we shall discuss later, on the record before us, it must be concluded that the litigation focused on the revolving letter of credit provision. To the extent the absence of these instructions harms Freeman, we note that Freeman had the burden of establishing the preclusive effect of the jury's verdict.
 
 
 [4]
 In the district court, the parties agreed that Havoco's attorney malpractice claim was governed by Illinois' general five-year limitations period, 735 ILCS 5/13-205. In relevant part, this provision establishes a five-year statute of limitations in causes of action for which a specific limitations period is "not otherwise provided." We note that Illinois has a specific statute that governs the limitations period in cases of attorney malpractice, 735 ILCS 5/13-214.3. This statute provides that actions for attorney malpractice must be brought "within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." Id. Sec. 5/13-214.3(b). The attorney malpractice statute also contains a statute of repose that bars any cause of action commenced "more than 6 years after the date on which the act or omission occurred." Id. Sec. 5/13-214.3(c). If applicable, the attorney malpractice statute might have barred Havoco's claim. However, the Illinois legislature applied the statute to causes of action "accruing on or after" its January 1, 1991 effective date. See id. Sec. 5/13-214.3(f). The district court found that Havoco's claim accrued October 30, 1990. Moreover, even if the attorney malpractice statute applied retroactively, Freeman never raised the issue, and therefore has waived it
 
 
 [5]
 The district judge who considered Havoco's malpractice claim was not the judge who had been assigned to the underlying case
 
 
 [6]
 See Johnson v. SCA Disposal Servs., 931 F.2d 970, 974 & n. 11 (1st Cir.1991) ("[W]e now adopt the rule that, in diversity cases, federal law governs the preclusive effect of prior federal judgments. This is the position of most of the other Circuit Courts of Appeals[.]") (collecting cases); 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure Sec. 4472 (1981 & Supp.1995) (identifying courts that have applied federal rules of preclusion between successive diversity actions); Romualdo P. Eclavea, Annot., State or Federal Law as Governing Applicability of Doctrine of Res Judicata or Collateral Estoppel in Federal Court Action, 19 A.L.R.Fed. 709, 712-14 (1974 & Supp.) (collecting cases)
 
 
 [7]
 It does not appear that any of our earlier cases have held squarely that federal principles of issue preclusion apply when the first judgment is that of a federal court sitting in diversity. Our decision in Gasbarra v. Park-Ohio Indus., Inc., 655 F.2d 119 (7th Cir.1981) applied, without analysis, state principles of preclusion to a prior federal diversity judgment. Recently, our decision in Golden v. Barenborg, 53 F.3d 866, 869 (7th Cir.1995), appears to have applied, without discussion, federal standards. We note that our recent cases have articulated a blanket rule that whenever the first judgment is a federal judgment, federal rules of preclusion must apply. See, e.g., EEOC v. Harris Chernin, Inc., 10 F.3d 1286, 1289 n. 4 (7th Cir.1993) ("Where the earlier action is brought in federal court, the federal rules of res judicata apply."); Barnett v. Stern, 909 F.2d 973, 977 (7th Cir.1990) (same); Conner v. Reinhard, 847 F.2d 384, 394 (7th Cir.) (same), cert. denied, 488 U.S. 856, 109 S.Ct. 147, 102 L.Ed.2d 118 (1988); Shaver v. F.W. Woolworth Co., 840 F.2d 1361, 1364 (7th Cir.) (same), cert. denied, 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988); In re Energy Coop., Inc., 814 F.2d 1226, 1230 (7th Cir.) (same), cert. denied, 484 U.S. 928, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987). Other cases of this circuit also have presaged the use of federal as opposed to state principles of preclusion regardless of whether the earlier federal judgment is that of a federal court sitting in federal question or diversity jurisdiction. See Reinke v. Boden, 45 F.3d 166, 170 (7th Cir.1995) (noting that federal rules of issue preclusion have been held to apply in successive causes of action in different federal courts when the first suit has been dismissed with prejudice under Rule 41(b) of the Federal Rules of Civil Procedure); Teamsters Local 282 Pension Trust Fund v. Angelos, 762 F.2d 522, 525 (7th Cir.1985) (stating that "[f]ederal courts apply federal principles of preclusion," but indicating that state preclusion rules apply if the first case was decided in state court) (citing Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 105 S.Ct. 1327, 84 L.Ed.2d 274 (1985))
 
 
 [8]
 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, supra note 6, Sec. 4472, at 737
 
 
 [9]
 We do not believe that the result would be any different if we applied the issue preclusion law of Illinois. The general rule in Illinois is that a party may be collaterally estopped from relitigating an issue when: (1) an issue decided in a prior adjudication is identical with the one presented in the instant suit; (2) a final judgment on the merits was entered in the prior case; and (3) the party against whom estoppel is asserted was a party or in privity with a party in the first cause. See, e.g., Congregation of the Passion v. Touche Ross & Co., 159 Ill.2d 137, 201 Ill.Dec. 71, 78, 636 N.E.2d 503, 510, cert. denied, --- U.S. ----, 115 S.Ct. 358, 130 L.Ed.2d 312 (1994); In re Nau, 607 N.E.2d 134, 143 (Ill.1992); Ballweg v. City of Springfield, 114 Ill.2d 107, 102 Ill.Dec. 360, 362, 499 N.E.2d 1373, 1375 (1986) (stating that the "only pertinent questions" are the three listed above); Illinois State Chamber of Commerce v. Pollution Control Bd., 78 Ill.2d 1, 34 Ill.Dec. 334, 337, 398 N.E.2d 9, 12 (1979)
 The State's courts have further explained that "the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined and not as to other matters which might have been litigated and determined," Housing Auth. for LaSalle County v. YMCA of Ottawa, 101 Ill.2d 246, 78 Ill.Dec. 125, 128, 461 N.E.2d 959, 962 (1984) (emphasis in original) (citations omitted); see also St. Paul Fire & Marine Ins. Co. v. Downs, 247 Ill.App.3d 382, 187 Ill.Dec. 130, 133, 617 N.E.2d 338, 341 (1993); Stofer v. First National Bank, 212 Ill.App.3d 530, 156 Ill.Dec. 570, 576, 571 N.E.2d 157, 163 (1991); Benton v. Smith, 157 Ill.App.3d 847, 109 Ill.Dec. 884, 888, 510 N.E.2d 952, 956 (1987); cf. Bulfin v. Eli Lilly & Co., 244 Ill.App.3d 785, 185 Ill.Dec. 269, 271, 614 N.E.2d 403, 405 (1993) (adding the "actually and necessarily litigated" requirement as a fourth prong to the three-part test discussed above), and have noted that the doctrine should not be applied against a party "if doing so will result in injustice." In re Estate of Stern, 263 Ill.App.3d 1002, 201 Ill.Dec. 507, 511, 636 N.E.2d 939, 943 (1994) (suggesting that injustice results when party alleged to be estopped had no opportunity to present issue in prior proceeding); see also Mohn v. International Vermiculite Co., 147 Ill.App.3d 717, 101 Ill.Dec. 193, 195, 498 N.E.2d 375, 377 (1986); Fred Olson Motor Serv. v. Container Corp. of Am., 81 Ill.App.3d 825, 37 Ill.Dec. 5, 8, 401 N.E.2d 1098, 1101 (1980). Finally, the Illinois cases indicate that a party who actually litigates a particular question will be estopped from later litigating issues that, although not raised in the prior suit, were essential to the earlier judgment. See Stofer, 156 Ill.Dec. at 576, 571 N.E.2d at 163; cf. Harris Trust & Sav. Bank v. Ellis, 810 F.2d 700, 705 (7th Cir.1987) ("In Illinois a finding essential to a judgment precludes further litigation on the same question of fact.").
 
 
 [10]
 See Colonial Penn Life Ins. Co. v. Hallmark Ins. Adm'rs, Inc., 31 F.3d 445, 449 (7th Cir.1994) ("[Plaintiff's ] claim here does not arise out of factual allegations that were ... made in the pleadings in the previous litigation. It therefore cannot be argued that this matter was 'actually litigated' in the previous action."); cf. Meyer, 36 F.3d at 1379 (noting that collateral estoppel will not apply unless the issue sought to be precluded was the same issue as that actually litigated in an earlier proceeding)
 
 
 [11]
 Freeman relies upon an Illinois decision, Stofer v. First National Bank, 212 Ill.App.3d 530, 156 Ill.Dec. 570, 571 N.E.2d 157 (1991). In Stofer, the court estopped the plaintiffs from disputing the validity of a contract because, in an earlier suit, they had argued for specific performance of that same contract. The court in the earlier suit necessarily had to conclude that the contract was valid to reach the plaintiffs' claim. See 156 Ill.Dec. at 576, 571 N.E.2d at 163. In contrast, the jury in the underlying litigation did not need to make any assumptions about Sumitomo's "other conduct" in order to analyze the revolving letter of credit issue
 
 
 [12]
 Although not essential to our decision, we note that it appears that Sumitomo's conduct with respect to the revolving letter of credit was not the major focus of the jury with respect to the breach of contract count. Sumitomo conceded that it had breached the revolving letter of credit provision; the issue before the jury was whether Havoco had waived its right to enforce it